33121. EADES *v.* SPENCER-ADAMS PAINT COMPANY.

124

Decided July 14, 1950.

*Currie & McGhee,* for plaintiff.

*Hewlett & Dennis, T. F. Bowden, Douglas Dennis,* for defendant.

SUTTON, C. J.   This was an action in the Civil Court of Fulton County by Neal R. Eades against the Spencer-Adams Paint Company for damages allegedly brought about by the use of defective paint manufactured by the defendant and purchased by the plaintiff through a retailer.   In the petition the following was alleged:   "3.   On January 24, 1949 plaintiff purchased from Cain Hardware Company, an Economy Auto Store Associate, in Richland, Georgia, twenty gallons of interior semi-gloss white paint, Government specification No. TT-3-508.   4.   Said twenty gallons of paint was ordered for plaintiff by J. A. Cain of Cain Hardware Company through Economy Auto Stores in Atlanta.   5.   This order was placed by Federal Government Specification TT-E-508, which sets out maximum and minimum tolerances for paint to be used on Federal Government jobs. 6.   Plaintiff had secured a subcontract for the painting of the inside of the Government post office at Swainsboro, Georgia, from H. C. Chambless, who had the general construction contract.   7.   Plaintiff proceeded to comply with his contract with the Government and painted the inside of said post office.   When said work was completed, the paint became discolored, and spotty, and portions of said paint dried, and portions did not.   A film formed on the surface of the painted wall, and the paint beneath did not dry.   8.   On the completion of the job the work was refused approval by the Federal inspector.   9.   Plaintiff sent a sample of the above referred to paint to the Federal laboratory in Washington, D. C., where it was examined and found defective in the following four points:

|   |   | Tolerances | Sample Tested |
|---|---|---|---|
| 1. | Consistency | 67-77KV | 89KV |
| 2. | Gloss | 40-70 | 11 |

| | | | |
|---|---|---|---|
| 3. | Skinning | None | Fails |
| 4. | Phtalic-Anhydride | 23% min. | 17.4% |

10. On a recheck of this materials report which was requested by Hon. Frank D. Smith, attorney for defendant, it was found that the paint was defective in the following three requirements:

| | | Tolerances | Sample Tested |
|---|---|---|---|
| 1. | Consistency | 67-77 K.U. | 88 K.U. |
| 2. | Gloss | 40-70 | 12 |
| 3. | Skinning | None | Fails |

11. Defendant was negligent in that it sold said paint as meeting Federal Specification TT-E-508, when in reality said paint did not meet said Federal Specification, as shown in Paragraph 10 of this petition. 12. Plaintiff was free of all negligence in the premises. 13. Because of the defendant's negligence as aforesaid the plaintiff was forced to purchase twenty gallons of Glidden paint and perform this job again, at the conclusion of which work the project was accepted and approved by the Government Inspector. 14. Plaintiff was forced to hire assistants to whom a total of $415.13 was paid in wages; plaintiff's personal labor was of the reasonable value of $293.82; the purchase-price of the twenty gallons of paint aforesaid was $81.40; plaintiff lost seven days from work trying to receive payment from defendant; plaintiff was forced to expend the sum of $150 on trips to Atlanta and Swainsboro in vain attempts to secure repayment from defendant, all of which totals $1090.35. 15. Defendant knows or ought to know the composition of its paint, and with the exercise of due care would have met the Federal specifications which this paint was represented to meet. 16. Petitioner alleges on information and belief that said paint was defective as aforesaid. 17. The manufacture of said paint was entirely within the control of defendant, and plaintiff had no control whatever over the manufacture and composition of said paint. 18. The defects in the paint as aforesaid were the sole and proximate cause of plaintiff's damage and injuries as aforesaid."

The defendant filed a general demurrer to the petition, the trial judge sustained the demurrer and dismissed the petition, and the plaintiff excepted.

The sole question before this court is whether or not the pe-

tition was good as against a general demurrer. It is the contention of the plaintiff that the alleged facts show a cause of action based on negligence; and it is the contention of the defendant that the alleged facts place the case under the generally recognized rule of non-liability of a manufacturer of defective articles for injury to the person or property of an ultimate consumer who purchased from a middleman, and that the case cannot be classified as coming under any of the exceptions to this rule.

In Ellis *v*. Lindmark, 177 Minn. 390 (225 N. W. 395), the plaintiffs, who were engaged in a poultry and egg business, sued a retailer and a wholesaler for damages, based on negligence. The plaintiffs had purchased cod liver oil from the retailer, but had received linseed oil instead, and fed it to their poultry with resultant damage. It appeared that the wholesaler had mistakenly shipped the retailer a barrel of linseed oil designated as cod liver oil and that the retailer did not discover the error before selling some of the oil to the plaintiff as cod liver oil. In discussing and determining liability the court in that case said:

"The drug company [the wholesaler] claims that the plaintiffs have no cause of action against it. It invokes the principle that the seller of a defective article or substance not in itself dangerous to a retailer, who in turn sells it to the ultimate consumer, who suffers damage from its use, is not liable at the suit of the consumer unless in a class of exceptional cases to which this does not belong. The claim is urgently pressed and is not without force.

"There was no contractual relation between the plaintiffs and the drug company. The plaintiffs' contract was with Lindmark. Neither the raw linseed oil nor the cod liver oil was a dangerous substance. Nor were they substitutes. They could not be used interchangeably.

"The cases are involved and not subject to a satisfactory classification. Sometimes liability is asserted on the ground of implied warranty; sometimes on the ground of false representation; sometimes the seller has violated a statute and thereby becomes liable as if for negligence; sometimes the action is based as here on actual negligence; sometimes the article sold is a

deadly or injurious poison; sometimes it is unwholesome food or an impure beverage intended for human consumption; sometimes the article is intrinsically dangerous; sometimes it is defective machinery, or an automobile with defective parts, the use of which results in harm to a third person; and sometimes recovery is denied in case of property damage though permitted in the case of injury to the person.

"We make no attempt to review the cases. Concededly they are in confusion. The case before us does not seem particularly difficult. The claim is not that the drug company delivered an inherently dangerous substance, but that it delivered a substance not ordered, and that damage resulted when such substance was used for the purpose for which that ordered was to be used. When the original seller negligently makes a mistake and his vendee is also negligent and harm results to one innocently purchasing, the law should put liability upon both parties. This is such a case. And though there are an abundance of cases to the contrary, the larger number perhaps in accord with them, there are plenty holding in principle the rule which we adopt. [Citing.]

"That the negligence resulted in injury to property and not to the person 'should not prevent recovery. [Citing.]

"Cases are collected and reviewed in 24 R. C. L. 512-518, §§ 804-810, and in notes in 17 A. L. R. 672; 39 A. L. R. 992; 42 A. L. R. 1243."

Additional annotations are found in 63 A. L. R. 341; 88 A. L. R. 528; 105 A. L. R. 1503; 111 A. L. R. 1240; 140 A. L. R. 192; and 142 A. L. R. 1490. In the last cited annotation the following comment is made: "The general rule stated and illustrated by the previous annotations, that a manufacturer or packer of a defective article is not liable for injuries to the person or property of an ultimate consumer purchasing through a middleman, with the possible exception of articles inherently dangerous to life or property—at least in the absence of knowledge of any defect existing at the time of release into the channels of trade— based upon the theory that such parties do not stand in any contractual relationship, has, while professedly recognized, been constantly restricted in its application by an increasing number of modern cases which recognize and enforce exceptions thereto."

There are numerous cases in Georgia recognizing the right of an ultimate consumer to recover from the manufacturer of a food or beverage or article intended for human consumption, which contains foreign matter or is otherwise defective, through the negligence of the manufacturer, and causes injury. "Where one prepares a proprietary or patent medicine and puts it upon the market and recommends it to the world as useful for the cure of certain diseases, the bottle containing it having therewith a prescription made by the proprietor of the medicine, in which he states that it is to be taken in certain quantities, and the medicine with this prescription is sold by the proprietor to a druggist for the purpose of being resold to persons who might wish to use it, and the druggist sells the same to a person who uses it in the quantity thus prescribed, and the same contains an ingredient such as iodide of potash in such quantity as proves harmful to the person thus using it, the proprietor is liable." *Blood Balm Co.* v. *Cooper,* 83 *Ga.* 457 (1) (10 S. E. 118, 5 L. R. A. 612, 20 Am. St. R. 324). "A manufacturer who makes and bottles for public consumption a beverage represented to be harmless and refreshing is under a legal duty not negligently to allow a foreign substance which is injurious to the human stomach, such as bits of broken glass, to be present in a bottle of the beverage when it is placed on sale; and one who, relying on this obligation, and without negligence on his own part, swallows several pieces of glass while drinking the beverage from a bottle, may recover from the manufacturer for injuries sustained in consequence." *Watson* v. *Augusta Brewing Co.,* 124 *Ga.* 121 (1) (52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. R. 157). Also, see *Fleetwood* v. *Swift & Co.,* 27 *Ga. App.* 502 (108 S. E. 909) ; *Maddox Coffee Co.* v. *Collins,* 46 *Ga. App.* 220 (167 S. E. 306) ; *Armour & Co.* v. *Miller,* 39 *Ga. App.* 228 (147 S. E. 184) ; s. c., 169 *Ga.* 201 (149 S. E. 698).

In *Simmons Co.* v. *Hardin,* 75 *Ga. App.* 420 (43 S. E. 2d, 553), recovery by a user from a manufacturer of a sofa bed or studio couch containing a defective spring causing personal injuries was allowed. In the opinion in that case the general rule as to the non-liability of a manufacturer to an ultimate consumer or user was discussed at length, and this court indicated its approval of the facts in that case as not being subject to the application of such a rule.

The reasoning in the *Ellis* case, supra, is sound, and we perceive no substantial difference in the position of the wholesaler in that case and the manufacturer in the present case. Negligence on the part of the retailer is not here involved. There is no controlling precedent in this State contrary to the ruling made in the *Ellis* case, and the trend of the cases decided in this State appears to be to allow recovery on the part of a consumer or user of a product, if through a failure to exercise ordinary care on the part of a manufacturer or someone not in privity with the user the product is imperfect, defective, or not as represented when placed on the market, and damage to the consumer or user is proximately caused thereby. The alleged facts in the present case show negligence, in general terms, on the part of the defendant in manufacturing and placing on the market a paint represented as meeting certain government specifications, obviously intended for use by persons desiring a paint of such quality, when in fact it did not meet such specifications, and resultant damage to the user who purchased the paint through a retailer as paint purporting to meet these specifications. Under the circumstances here shown there was a duty on the part of the manufacturer to exercise ordinary care in producing and placing on the market paint conforming to the specifications as represented, and if the paint did not meet the represented specifications, it might reasonably be anticipated that loss or damage to a user would result. The alleged negligence here shown in general terms was good as against a general demurrer, and a cause of action was shown. Accordingly, the trial judge erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. Felton and Worrill, JJ., concur.*