The FLINTKOTE COMPANY,
Plaintiff-Appellant,

v.

DRAVO CORPORATION, Diamond Manufacturing Company, Inc. and B. F. Diamond Construction Company, Inc., Defendants-Appellees.

No. 81–7410.

United States Court of Appeals,
Eleventh Circuit.

June 14, 1982.
Rehearing Denied Aug. 4, 1982.

Neely, Player, Eichelberger, Hamilton, Hines & Welch, John W. Winborne, III, Atlanta, Ga., for plaintiff-appellant.

Porter, Davis & Saunders, J. Alexander Porter, Atlanta, Ga., for Dravo Corp.

Dan B. Wingate, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for B. F. Diamond Const. Co.

Hurt, Richardson, Garner, Todd & Cadenhead, A. Paul Cadenhead, James H. Cox, Atlanta, Ga., for Diamond Mfg.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

KRAVITCH, Circuit Judge:

Appellant, The Flintkote Company, appeals from the grant of summary judgment for the defendants, in which the district court held that under Georgia law appellant could not recover in tort for the economic losses allegedly suffered as a result of the defendants' negligent design, fabrication, assembly, erection, and inspection of a "travelling ship unloader." Flintkote argues that the district court erred in applying the economic loss rule to the facts in this case. We disagree and affirm.

## A. Factual Background

In August of 1963, Flintkote entered into a rental agreement with the Savannah District Authority (SDA), in which the SDA agreed to acquire, develop and lease to Flintkote a facility to be used by Flintkote to manufacture gypsum wall board. The facility was to include a loading dock equipped with a "traveling ship unloader," a crane-like apparatus used to lift buckets of gypsum rock from the holds of cargo ships. In September of 1963, the SDA contracted with appellee Dravo Corporation to design and erect the unloader. Pursuant to the powers contained in the rental agreement with SDA, Flintkote served as SDA's agent in negotiating and executing the contract with Dravo. Dravo subcontracted some of the work to appellees Diamond Manufacturing Co. and B. F. Diamond Construction Co. The unloader was completed and accepted by the SDA and Flintkote, as its agent, prior to January 1, 1966. Flintkote operated the unloader continuously and without abnormal interruption from that time until April 28, 1978, when the rear downstream portal column of the unloader wrenched forward, twisting and bending not only the portal column, but also other structural members of the unloader. No personal injuries or damage to other property resulted from this incident; however, the unloader was rendered inoperable, necessitating significant repairs. The breakdown allegedly resulted from a defective gusset plate on the downstream portal column. The gusset plate was intended to redistribute the weight of the unloader's boom that rested on the downstream portal column to other structural members of the unloader; however, because the plate was cut and not rewelded during the erection of the unloader, the plate did not adequately serve its function, and the column eventually gave way under the weight of the boom. The defective gusset plate went unnoticed by Flintkote and appellees because a machinery house rested on top of it. Pursuant to its contractual obligations under the rental agreement with the SDA, Flintkote repaired the damaged unloader at a cost of approximately $252,000. Flintkote also expended a significant sum of money to obtain an alternative means to unload gypsum rock at the leased facility while the unloader was being repaired.

Appellant filed this diversity action in federal district court on June 26, 1979, seeking to recover for the cost of repairing the unloader and obtaining an alternative means of unloading the gypsum rock. Flintkote alleged that Dravo was negligent in the design, fabrication, and erection of

* Honorable Virgil Pittman, U. S. District Judge for the Southern District of Alabama, sitting by designation.

the traveling ship unloader, that Dravo was negligent in the supervision and observation of the work of Diamond Construction and Diamond Manufacturing, that Diamond Construction was negligent in the assembly and erection of the unloader, and that Diamond Manufacturing was negligent in conducting various inspections of the completed unloader. The defendants moved for summary judgment on two grounds. First, they argued that the negligence action was barred by applicable statutes of limitations. Second, they asserted that under Georgia law, Flintkote could not recover for purely "economic losses" in a negligence action; such relief could be obtained only under the law of contract. The district court agreed with defendant's second contention and granted the defendants' motion for summary judgment, without considering whether the action was time barred. This appeal followed.

## B. *The Economic Loss Rule*

▬ Where federal jurisdiction is based on diversity of citizenship, the substantive law of the forum state applies. *E.g., Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Green v. Edmands Co.*, 639 F.2d 286 (5th Cir. 1981). In determining the law of the state, federal courts must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise. *See West v. American Telephone & Telegraph*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Allen v. A. G. Edward & Sons, Inc.*, 606 F.2d 84, 87 (5th Cir. 1979); *Benante v. Allstate Insurance Co.*, 477 F.2d 553, 554 (5th Cir. 1973). "Only where no state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule." *Benante v. Allstate Insurance Co.*, 447 F.2d at 554. *See Trail Builders Supply Co. v. Reagan*, 409 F.2d 1059 (5th Cir. 1969). Here, the parties agree that Georgia law controls. Yet the application of the economic loss rule under Georgia law has never been addressed by the Georgia Supreme Court. Our task therefore is to carefully consider the decisions of the Georgia Court of Appeals to determine whether the district court properly concluded that the rule serves to bar appellant's negligence claims under the circumstances of this case.

In *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1975), the Georgia Court of Appeals first articulated the Georgia economic loss rule. There, the plaintiff brought an action in tort against the manufacturer and seller of a new car for damages to the vehicle arising from defects in the engine. He alleged that the engine was running hot and that neither the seller nor the manufacturer corrected the problem. After twenty-two months of use, the engine was destroyed, and the plaintiff sold the car for less than half of its book value. The plaintiff sued on the grounds that General Motors negligently manufactured the automobile and that Jim Letts Oldsmobile negligently serviced it, and sought damages for the diminution in value of the car, cost of repairs, loss of use of the car while it was being repaired, time lost from work, and inconvenience.

▬ In affirming the trial court's grant of summary judgment for defendants, the Court of Appeals first observed that under Georgia law it is well settled that misfeasance in the performance of a contractual duty may give rise to a tort action. 217 S.E.2d at 604. *See Mauldin v. Sheffer*, 113 Ga.App. 874, 879–880, 150 S.E.2d 150, 154 (1966). "But in such cases the injury to the plaintiff has been 'an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted for benefit.' *Orkin Exterminating Co. v. Stevens*, 130 Ga.App. 363, 366, 203 S.E.2d 587, 589. '[I]n order to maintain an action ex delicto because of a breach arising out of a contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely a duty imposed by the contract itself.' *Mauldin v. Sheffer*, 113 Ga.App. at 879–80, 150 S.E.2d at 154." 217 S.E.2d at 604. The court

found that the duty of the manufacturer to produce a car that would not overheat and the seller to properly repair the car were duties which arose solely from the contract between the plaintiff and the defendants. Moreover, the court observed:

There may have been other duties owed by the defendants to Long, which arose independent of the contracts, such as the duty imposed on suppliers and repairmen of chattels to use reasonable care not to place in the hands of the consumer a "product which may reasonably be expected to be capable of inflicting substantial harm if it is defective." Prosser, Law of Torts, 4th Ed. (1971), p. 643. *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050. *See Griffith v. Chevrolet Motor Division,* 105 Ga.App. 588(1), 125 S.E.2d 525. However, Long's complaint does not assert that such a duty has been breached by the defendants, nor has he submitted any evidence that he has suffered "substantial harm" within the meaning of the products liability rule. The "harm" contemplated or the interest protected against by such rule is "bodily harm," injury to "life and limb," injury to others and damage to property other than the product itself. *See, e.g., Griffith v. Chevrolet Motor Division, supra; Washburn, etc., Co. v. General Motors Corp.,* 90 Ga.App. 380, 83 S.E.2d 26; *Moody v. Martin Motor Co., supra* [76 Ga.App. 456, 46 S.E.2d 197]. "[W]here there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." Prosser, Law of Torts, 4th Ed. (1971), p. 665.

*Id.* In the absence of an accident or other property damage, the court found that the plaintiff's only recoverable damages were economic—diminution in value and cost of repairs, and applying what has become to be known as the economic loss rule, concluded that the plaintiff's only cause of action was in contract, not tort.

Since *Long v. Jim Letts Oldsmobile,* the Georgia Court of Appeals has invoked the economic loss rule on several occasions to bar tort actions brought under both negligence and strict liability theories. For example, in *Chrysler Corp. v. C. C. Taylor,* 141 Ga.App. 671, 234 S.E.2d 123 (1977), the plaintiff purchased a new Dodge automobile that had several defects, which the defendant was unable to repair. The plaintiff sued in tort under both negligence and strict liability theories, seeking damages for loss of bargain, the cost of replacing the defective automobile, interest paid on the car, and wages lost while attending to the vehicle. On appeal, the court held that the trial judge erred in not directing a verdict for the defendant on both grounds for relief. In addressing the negligence claim, the court stated:

The appellee alleged that the appellant was negligent in manufacturing and failing to repair a defective automobile. However, the appellee did not allege that this negligence caused any damage to his person or property other than damages attendant to his receiving a vehicle not up to the standards that he contracted to purchase; he simply sued for loss of the benefit of his bargain. Such damages are not recoverable in negligence.

234 S.E.2d at 124.

In *Henderson v. General Motors Corp.,* 152 Ga.App. 63, 262 S.E.2d 238 (1979), the plaintiff sought to recover under a strict liability theory solely economic damages sustained when a parking gear pin broke, causing the breakdown of the transmission of the plaintiff's automobile. The Court of Appeals affirmed the trial court's grant of summary judgment in favor of the defendant, holding that because "[t]he injuries claimed are solely economic damages to the allegedly defective product itself and unaccompanied by other property damage or personal injury from the use of the product," an action for recovery pursuant to a theory of strict liability would not lie. 262 S.E.2d at 239–40. *See Waller v. Transworld Imports, Inc.,* 155 Ga.App. 438, 271 S.E.2d 1 (1980) (damages attendant to re-

ceiving a defective automobile not recoverable in negligence). *But see Mike Bajalia, Inc. v. Amos Construction Co.*, 142 Ga.App. 225, 235 S.E.2d 664 (1977). Similarly, in *McClain v. Harveston*, 152 Ga.App. 422, 263 S.E.2d 228 (1979), the plaintiff brought a negligence action against a building contractor, seeking the cost of repairing or replacing the allegedly defective roof on plaintiff's house. The Court of Appeals affirmed the trial court's award of summary judgment to the defendant, reasoning that the recovery sought by the plaintiff is available only in a contract action, since plaintiff "simply sued for the loss of the benefit of his bargain." *Id. See Mike Bajalia, Inc. v. Amos Construction Co., supra* (plaintiff may not recover in negligence for damage to defective building components supplied by defendant; however, plaintiff may sue in negligence for damages to components supplied by other sources, resulting from defendant's defective components). *See also Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co.*, 519 F.Supp. 60 (S.D.Ga.1981) (economic losses resulting from a defective part in an air compressor train not recoverable in a negligence action); *A. J. Kellos Construction Co. v. Balboa Insurance Co.*, 495 F.Supp. 408 (S.D.Ga. 1980) (economic losses resulting from roofing that failed to conform to contract specifications not recoverable in a negligence action against supplier).

These decisions indicate that the Georgia Court of Appeals has generally looked at the nature of the damages suffered by a plaintiff in determining whether a suit may be brought in tort or only in contract. Although the harm suffered may not in all instances suffice to distinguish between a tort and contract action, *e.g., Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981), the Georgia decisions addressing this issue have in almost all cases held that a plaintiff simply cannot recover in tort for economic losses resulting from loss of value or use of the thing sold, or the cost of repairing it. Two Georgia Court of Appeals decisions, however, at first glance appear to deviate from this general rule. *See Sam Finley,*

*Inc. v. Barnes*, 156 Ga.App. 802, 275 S.E.2d 380 (1980); *Long Mfg., N.C., Inc. v. Grady Tractor Co.*, 140 Ga.App. 320, 231 S.E.2d 105 (1976). Yet upon close inspection, the decisions reveal that the losses suffered by the plaintiffs resulted from an accident or injury to other property, and therefore the economic loss rule was inapplicable.

In *Long Manufacturing, supra*, the first case decided after *Jim Letts Oldsmobile*, a portable tobacco barn manufactured by the defendant collapsed as it was being transferred from one site to another. Plaintiff brought an action in tort, alleging negligence by the manufacturer in the design, manufacture, inspection and testing of the barn, seeking damages for the difference in the value of the barn before and after the collapse. The jury found for the plaintiff, and the court of appeals affirmed the verdict on the ground that the evidence was sufficient to permit the jury to find that the barn was defectively designed, without adequately distinguishing the case from *Jim Letts Oldsmobile*. The court merely stated that "[a] cause of action in *negligence* for property damage to the defective personal property itself is cognizable under Code Ann. § 105–106. *Eades v. Spencer-Adams Point Co.*, 82 Ga.App. 123, 60 S.E.2d 543. *See also* Prosser, Law of Torts (4th Ed. 1971), p. 665; compare with 'economic' damages only, *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602." 231 S.E.2d at 106–107. This decision can be reconciled with prior and subsequent decisions of the Georgia Court of Appeals only by interpreting it as finding that the plaintiff's losses resulted from an accident because of the sudden collapse of the barn or from other property damage because the design defect caused injury to non-defective parts of the barn. The court in other cases has not allowed recovery in tort for economic losses stemming from injury to nondefective parts of an otherwise defective product. *See, e.g., Henderson v. General Motors Corp., supra.* We therefore conclude that *Long Manufacturing* falls within the accident exception to the economic loss rule. *See Gainous v. Cessna Aircraft Co.,*

491 F.Supp. 1345 (N.D.Ga.1980).[1] Unfortunately, neither *Long Manufacturing* nor any other Georgia decision discusses the nature and scope of the accident exception.

*Sam Finley, Inc. v. Barnes, supra,* also seems to deviate from the economic loss rule; however, upon close scrutiny, the case falls under the "damage to other property" exception. There the owner of a roller skating rink sued Sam Finley, Inc., a paving contractor, for the negligent construction of the asphalt base upon which the plastic surface of the roller rink floor was applied. The defective asphalt base caused damage to the plastic surface, necessitating extensive repairs, the cost of which the plaintiff sought to recover. *See Sam Finley, Inc. v. Barnes,* 275 S.E.2d at 382–83. The jury returned a verdict for the plaintiff, and the defendant appealed on the ground that it did not breach any duty owed to the plaintiff from which an action in tort would arise, but that the court should have limited the trial to claims arising under the contract. The Georgia Court of Appeals disagreed, holding that the defendant breached a duty owed independent of the contract to avoid harming the plaintiff. "There is a duty implied in every construction contract 'to perform it skillfully, carefully, diligently, and in a workmanlike manner.'" 275 S.E.2d at 382, *citing Howell v. Ayers,* 129 Ga.App. 899, 202 S.E.2d 189 (1973).

This decision appears to conflict with the court's prior decision in *McClain v. Harveston, supra* (building contractor not liable in tort for the cost of repairing or replacing an allegedly defective roof). Unlike *McClain,* however, the plaintiff in *Sam Finley* was seeking to recover damages to other property caused by the negligent construction of the asphalt base and not for purely economic losses from the defective product itself. The decision therefore is not inconsistent with *McClain v. Harveston.*

■ In summary, the Georgia Court of Appeals has adopted the economic loss rule to distinguish between those causes of action that may be brought only in a contract warranty action and those that give rise to an action in tort. The rule acts as a shorthand means of determining whether a plaintiff is suing for injuries arising from the breach of a contractual duty to produce a product that conforms in terms of quality or performance to the parties expectations or whether the plaintiff seeks to recover for injuries resulting from the breach of the duty arising independently of the contract to produce a nonhazardous product that does not pose an unreasonable risk of injury to person or property. The economic loss rule prevents recovery in tort when a defective product has resulted in the loss of the value or use of the thing sold, or the cost of repairing it. Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain. The rule does not prevent a tort action to recover for injury to other property and persons because the duty breached generally arises independent of the contract. Nor does it preclude recovery for damages to the defective product itself, where the injury resulted from an accident.[2]

---

1. *Gainous v. Cessna Aircraft Co.,* 491 F.Supp. 1345 (N.D.Ga.1980), held that the plaintiff could recover under theories of negligence and strict liability for damages to an aircraft caused when a propeller blade disengaged from the engine during take off, causing a crash landing and extensive damage to the airplane. The court reasoned that the damage incurred by the plaintiff was more analogous to that suffered in *Long Manufacturing,* where a barn suddenly collapsed, than in *Jim Letts Oldsmobile,* where a car engine was destroyed over time as a result of a defect in the cooling system. In distinguishing *Jim Letts Oldsmobile* from *Long Manufacturing,* the court concluded that the former involved economic losses resulting from

deterioration whereas the latter involved damages caused suddenly through "accident." *Id.* at 1346 & n.1.

2. The accident exception is not well-defined under Georgia law. Nevertheless, we believe that in distinguishing between physical harm to the defective product itself, which gives rise to a tort action under the accident exception or otherwise, and economic losses, which are not recoverable in tort, the Georgia Supreme Court would look to the essential differences between tort and contract actions and follow those courts that have drawn the line between physical harm and economic loss "by analyzing interrelated factors such as the nature of the

In this case, Flintkote seeks to recover in a tort action the cost of repairing the unloader and of obtaining an alternative means of unloading gypsum rock while the unloader was inoperable. These damages constitute purely economic losses and resulted from a defective gusset plate, which over the course of twelve years caused the unloader to deteriorate. As the district court noted, this case is analogous to *Henderson v. General Motors Corp., supra* (recovery in tort denied for economic damages sustained from defective parking gear pin causing damages to the automobile transmission) and *Long v. Jim Letts Oldsmobile, supra* (defective cooling system caused total destruction of a car's engine). Therefore, absent some reason that the economic loss rule should not bar recovery in tort in this case, we must affirm the district court's grant of summary judgment for the appellees.

Flintkote first argues that the economic loss rule does not apply because appellees are contractors and professionals, not manufacturers. It contends that the rule applies only to preclude tort actions brought against distant manufacturers who have no direct involvement with the ultimate users of their products. We disagree. First, Georgia case law does not support appellant's contention that application of the economic loss rule depends upon the nature of the defendant, applying only to distant manufacturers with no direct dealings with the plaintiff. Appellant does not cite a single decision directly supporting its position. To the contrary, the Georgia Court of Appeals has expressly applied the rule in a case involving a contractor. *See McClain v. Harveston, supra.* Although the Georgia Court of Appeals has not yet had occasion to apply the rule in a case involving a professional, it has invoked the economic loss rule to bar tort actions against seller-repairmen, *see Long v. Jim Letts Oldsmobile, supra; Waller v. Transworld Imports, Inc., supra,* and a manufacturer

aware of the plaintiff's particular needs, *Mike Bajalia, Inc. v. Amos Construction Co., supra.* *See Synthetic Industries, Inc. v. Whitlock, Inc.,* 439 F.Supp. 1297, 1301 (N.D. Ga.1977) (economic loss rule applied to a seller and erector of a silo). Moreover, the purpose of the rule, which is to distinguish between those actions cognizable in tort and those that may be brought only in contract, does not support appellant's contention. The distinction between these causes of action does not depend upon the nature of the party being sued, but rather upon the nature of the duty that has been breached, which in most instances can be ascertained from the harm suffered. In those cases, where the rule does suffice to distinguish between actions arising in tort and contract, courts have examined such factors as the nature of the defect, type of risk, and manner in which the injury arose, but not the nature of the defendant. *See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., supra.*

It is true that under Georgia law a duty of care independent of contract arises in certain professional relationships. There is a duty implied in every construction contract to avoid harming the plaintiff by performing the contract "skillfully, carefully, diligently, and in a workmanlike manner." *Sam Finley, Inc. v. Barnes,* 275 S.E.2d at 382. This rule does not create an exception to the economic loss rule, however; the harm protected against is injury to persons and damage to property other than the product contracted for, unless the damage resulted from an accident. *Compare McClain v. Harveston, supra,* (denying tort recovery from contractor for economic losses resulting from a defective roof) *with Sam Finley, Inc. v. Barnes, supra* (permitting recovery in tort from contractor whose negligent construction of an asphalt base caused damage to the plastic surface of a roller rink). Here, Flintkote seeks to recover only economic losses resulting from the alleged negligent construction of the un-

---

defect, type of risk, and the manner in which the injury arose." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165,

1173 (3d Cir. 1981). *See Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982).

**950**

loader and therefore is barred from bringing this action in tort.[3]

Nor may Flintkote recover purely economic losses in tort by alleging that appellees were engaged in other professional relationships. Appellant asserts that Dravo undertook to render professional engineering, mechanical and electrical services when it contracted with the SDA to design, fabricate and erect the traveling ship unloader; that Diamond Manufacturing contracted with Dravo to provide professional services necessary to erect certain portions of the unloader and to test and inspect the completed unloader; and that Diamond Construction agreed to render professional services by entering into a contract with Dravo "to perform work on the construction site related to the erection and assembly of the unloader." Brief for Appellant at 39. Even if the appellees acted as professionals in performing certain of their contractual obligations, we nevertheless do not think that appellant may recover in tort for purely economic losses.[4] Appellant cites no authority subsequent to the adoption of the economic loss rule that indicates that professionals may be sued in tort for purely economic losses, and those decisions upon which appellant relies involved injury to other property, an exception to the economic loss rule. See City & Central Ry. Co. of Savannah v. Brauss, 70 Ga. 368 (1883); Sam Finley, Inc. v. Barnes, supra; Maulden v. Sheffer, supra; Porter v. Davey Tree Expert Co., 34 Ga.App. 355, 129 S.E. 557 (1925). Moreover, the Georgia courts have never addressed whether the economic loss rule applies to professionals other than contractors. In the absence of any indication that other professionals should be treated differently than contractors, we are unwilling to except causes of actions against them from the operation of the economic loss rule. We are especially reluctant to make an exception to the rule where the exercise of professional skills occurred only in the process of manufacturing or constructing a product. To do so would effectively eviscerate the economic loss rule by permitting parties suffering solely economic losses to sue for the benefit of their bargain in tort by merely alleging, as does appellant here, that a party to the manufacture or construction of a defective good negligently performed some "professional" task. In light of the foregoing, we reject appellant's contention that because appellees are contractors and professionals the economic loss rule does not apply.

Appellant also claims that the district court erred in granting summary judgment on the causes of action alleging negligent inspection, observation and supervision because the economic loss rule is not applicable to such causes of action. We reject this contention for the same reasons we rejected the claim that the rule does not apply to professionals. Appellant cites no authority to support its argument; in each decision in which the Georgia courts have recognized a cause of action in tort for negligent inspection, observation or supervision, the plaintiffs sought recovery for injuries to their persons or other property, the exceptions to the economic loss rule. See e.g., Argonaut Insurance Co. v. Clark, 154 Ga.App. 183, 267 S.E.2d 797 (1980); Sims v.

---

3. Those cases relied on by appellant for the proposition that Georgia courts have permitted actions against contractors for negligent performance, despite the type of damages suffered, involved damages to other property and/or pre-date the adoption of the economic loss rule. See Foster Wheeler Corp. v. Georgia Power Co., 140 Ga.App. 261, 230 S.E.2d 494 (1976); Howell v. Ayers, 129 Ga.App. 899, 202 S.E.2d 189 (1973); E. & M. Construction Co. v. Bob, 115 Ga.App. 127, 153 S.E.2d 641 (1967); Bodin v. Gill, 216 Ga. 467, 117 S.E.2d 325 (1960); Housing Authority of the City of Carrollton v. Ayers, 211 Ga. 728, 88 S.E.2d 368

(1955); Block v. Happ, 140 Ga. 145(2), 86 S.E. 316 (1915).

4. The law of Georgia "imposes upon persons of professional standing performing medical, architectural, engineering, and those performing other like and skilled services, pursuant to their contracts made with their clients, an obligation to exercise a reasonable degree of care, skill and ability, such as is ordinarily exercised under similar conditions and like circumstances by persons employed in the same or similar professions." Maulden v. Sheffer, 150 S.E.2d at 154–55. We do not here decide whether or not the appellees were professionals.

*American Casualty Co.*, 131 Ga.App. 461, 206 S.E.2d 121, *aff'd sub nom. Providence Washington Insurance Co. v. Sims*, 232 Ga. 787, 209 S.E.2d 61 (1974); *Southeastern Elevator Co. v. Phelps*, 70 Ga.App. 331, 28 S.E.2d 85 (1943). Thus, we refuse to except such causes of action from the operation of the economic loss rule.

■ Finally, Flintkote contends that Georgia's economic loss rule reveals no viable formula to be applied to the facts of this case. It argues that the decisions of the Georgia Court of Appeals have been inconsistent in their underlying rationale and application, revealing four tests for the application of the rule, and urges us to invoke what it describes as a qualitative analysis for determining whether a cause of action is cognizable in tort or only in contract. The relevant criteria, according to appellant, for determining the nature of a cause of action are the relationship of the parties, nature of products, nature of the defect, type of risk, and the way the injury arose. On occasion, it may be difficult to determine whether the injury to a defective product itself resulted from the breach of a duty arising in contract or tort. *See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., supra; Long Mfg., N. C., Inc. v. Grady Tractor Co., supra.* In such cases, courts should examine such factors as the nature of the defect, the type of risk, and the manner in which the injury arose. The facts of this case, however, do not require that we deviate from the general application of the economic loss rule and examine other factors. Appellant seeks only to recover for the cost of repairing the unloader and loss of its use. These economic losses were caused by a defective gusset plate, which over the course of twelve years caused the breakdown of the unloader. The defect neither caused a sudden accident nor injury to persons or other property. Appellant therefore may not recover its purely economic losses in tort.

For the above reasons, we AFFIRM the district court.