## A97A0620. TERRELL v. HOLMES.
(487 SE2d 6)

BLACKBURN, Judge.

Cecil Roland Terrell appeals the grant of summary judgment to Lynn Holmes on Terrell's claim of slander, contending that the trial court improperly found the alleged slanderous statements to be privileged. For the reasons discussed below, we affirm the trial court's order.

Holmes was president of Brewton Parker College, and Terrell was vice president for development. Terrell was dating Lisa Bailey, an employee of the college who worked directly for Terrell. In May 1995, Bailey informed Holmes of problems in her relationship with

Terrell. About a week later, Holmes was informed by two individuals that they had seen Terrell pour beer on Bailey at a restaurant. According to Holmes, the individuals also said Bailey had told them Terrell had threatened her on occasions. Bailey denied that she had made such statements. After this lawsuit was filed, Bailey and Terrell were married.

Holmes discussed the situation with the board of trustees and certain other vice presidents of the college. Alan Gragg, vice president for academic affairs, advised Holmes that there was a possibility Bailey could sue the college for sexual harassment. Holmes then met with Terrell and informed him that he was being terminated. Holmes told Terrell that he had exposed the college to a potential sexual harassment lawsuit. According to Terrell, Holmes also stated that Terrell was incompetent.

Terrell subsequently sued Holmes for slander, alleging that Holmes defamed him in his profession by accusing him of sexual harassment and incompetence. The trial court granted summary judgment to Holmes, finding that there was no publication since the allegedly slanderous statements were made only to individuals authorized to receive them.

1. Terrell contends that the court erred in holding that Holmes' statements to Gragg were privileged. This contention mischaracterizes the trial court's holding, as the court did not hold that such statements were privileged under OCGA § 51-5-7. Rather, it held that such statements were subject to the "intracorporate exception" to the rule of publication, and thus did not constitute publication as a matter of law.

"Publication is indispensable to recover for slander. Generally, publication is accomplished by communication of the slander to anyone other than the person slandered. Over the years, however, an exception to the broad definition of publication has evolved: when the communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive information, there is no publication of the allegedly slanderous material, and without publication, there is no cause of action for slander." (Citations and punctuation omitted.) *Kurtz v. Williams*, 188 Ga. App. 14, 15 (3) (371 SE2d 878) (1988); see also *Fly v. Kroger Co.*, 209 Ga. App. 75, 77 (432 SE2d 664) (1993).

Pretermitting the issue of whether any statements made to Gragg were slanderous, it is clear that Gragg falls within this intracorporate exception. Along with Terrell, Gragg was one of five vice presidents of the college who, with the president, were entrusted with management of the college. Holmes advised Gragg of the beer pouring incident and the allegations that Terrell had threatened

Bailey, and relied upon Gragg for advice regarding how to handle the situation. It was Gragg who first advised Holmes of the possibility that a sexual harassment lawsuit could be filed against the college.[1]

The fact that Gragg was not Terrell's superior does not render the intracorporate exception inapplicable, as such exception is not limited to individuals above the plaintiff in the organizational hierarchy. See *Ga. Power Co. v. Busbin*, 159 Ga. App. 416, 422 (9) (283 SE2d 647) (1981), rev'd on other grounds, 249 Ga. 180 (289 SE2d 514) (1982). The relevant question is whether, because of Gragg's duty or authority, he had reason to receive the information. *Kurtz*, supra. As a senior management employee, subordinate only to the president, it is to be expected that Gragg would be consulted by the president prior to a significant action such as the termination of another vice president. This is particularly so where the reason for the termination involves actions which could negatively impact the college as a whole. As vice president of academic affairs, Gragg clearly had reason to be advised of the alleged acts of another vice president in order to provide input regarding the appropriate action to be taken.

In addition to his position as one of five vice presidents, Gragg's particular responsibilities also demonstrate that statements to him are covered by the intracorporate exception to the publication rule. Gragg was responsible for the adoption of the college's sexual harassment policy, and had become familiar with the issue by attending conferences regarding sexual harassment in the educational system. Because of this expertise, Gragg had reason to be advised and consulted regarding matters exposing the school to a potential harassment suit. Accordingly, Gragg is subject to the intracorporate exception, and the communication of allegedly slanderous remarks to him does not constitute publication as a matter of law.

Terrell contends that there is a jury question regarding whether the allegedly slanderous remarks were uttered maliciously, and that this precludes summary judgment. However, "[c]ontrary to [Terrell's] assertion, the [intracorporate] exception to the publication rule is not a conditional defense destroyed by proof of malice but, rather, an element of the tort of slander. . . . Whether the communication was made maliciously and with knowledge of falsity is immaterial when there has been no publication, for without publication there is no . . . slander." *Kurtz*, supra at 16 (3). Thus, Terrell's contention is without merit.

2. Terrell also contends that Holmes published his alleged slan-

---

[1] There is no evidence that Holmes made slanderous remarks to Gragg regarding Terrell's competence as a manager. "If there is no evidence of any specific words or statements uttered by [Holmes], there can be no finding that he published a slander." *ITT Rayonier v. McLaney*, 204 Ga. App. 762, 765 (2) (420 SE2d 610) (1992).

derous remarks by repeating them to Bailey, Terrell's girl friend. After being terminated by Holmes, Terrell told Bailey that he had been fired. He told her that Holmes had indicated he was guilty of sexual harassment, that he had put the college in danger of a lawsuit, and that he was incompetent as a manager. In Terrell's presence, Bailey then telephoned Holmes to discuss the situation and intercede on his behalf. According to Bailey, Holmes told her that he had fired Terrell because of sexual harassment and his incompetence as a manager. Bailey met with Holmes later that day to discuss the situation further, although she did not in her deposition provide details of this conversation.

We need not decide whether Bailey, as a subordinate employee, is covered by the intracorporate exception to the rule of publication, because Georgia law is clear that "there can be no recovery for an invited libel." *Ga. Power Co. v. Busbin,* 249 Ga. at 181. Terrell himself informed Bailey of Holmes' allegedly slanderous remarks, and then allowed Bailey to telephone Holmes in Terrell's presence to intercede on his behalf. "The only rational conclusion to be drawn from this evidence is that [Terrell] invited the publication to [Bailey] of the allegedly [slanderous] matter." Id. at 182. Accordingly, Terrell cannot recover for the publication of the statements to Bailey.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED APRIL 17, 1997 —
RECONSIDERATION DISMISSED MAY 2, 1997 — 
 Before Judge Mullis.
*M. Francis Stubbs,* for appellant.
*Johnson & Montgomery, Albert S. Johnson,* for appellee.