[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11607
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00110-RSB-BKE

LLOYD DAN MURRAY, JR.,
Individually and on behalf of all others
similarly situated,
JENNIFER MCGHAN,
Individually and on behalf of all others
similarly situated,

Plaintiffs-Appellants,

versus

ILG TECHNOLOGIES, LLC,
d.b.a. ILG Information Technologies,
BARIS MISMAN,
Individually and a Sole Proprietor of
ILG Information Technologies,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 8, 2020)

Before JORDAN, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Appellants Lloyd Dan Murray, Jr., and Jennifer McGhan (the Bar

Applicants), appeal the district court's order granting summary judgment to

Appellees in the Bar Applicants' civil lawsuit.  The Bar Applicants filed the

underlying civil action in the Superior Court of Bryan County, Georgia after they

learned they were erroneously told they had failed the Georgia bar exam.

The Bar Applicants sued Appellees ILG Technologies, LLC, and Baris

Misman (the sole owner of ILG), contending ILG was to blame for the issuance of

the incorrect results because ILG provided the Georgia Office of Bar Admissions

with a software system to aid in the administration of the entire bar-admission

process.  In an amended complaint, the Bar Applicants alleged claims of

negligence, attorney's fees, negligent misrepresentation, breach of contract, strict

liability (based on product defect), negligent design, and defamation.  The Bar

Applicants also sought to represent two classes—one made up of similarly situated

applicants who sat for the July 2015 bar exam, and the other of applicants who sat

for the February 2016 exam.

2

Appellees removed the case to the United States District Court for the Southern District of Georgia and, following discovery, moved for summary judgment on all of the Bar Applicants' claims. Appellees contended that, even assuming their software factually caused the grading error that gave rise to the Bar Applicants' claims, the Bar Applicants could not legally recover the damages they sought through any of the asserted claims.

As relevant to the instant appeal, the district court granted Appellees' summary judgment as to the Bar Applicants' claims for ordinary negligence, strict liability, and negligent design after concluding those claims were barred by Georgia's economic loss rule. The district court also granted Appellees' motion as to the Bar Applicants' defamation claim, concluding the Bar Applicants failed to show Appellees "published" the incorrect exam results. On appeal, the Bar Applicants challenge these conclusions, arguing the district court misapplied Georgia law in assessing their claims.[1] After review, we affirm.

## I.  FACTUAL BACKGROUND

### A.  *ILG's Contract with the Office of Bar Admissions*

---

[1] On appeal, the Bar Applicants make no reference to their claims for attorney's fees, negligent misrepresentation, or breach of contract. They have therefore abandoned any argument that the district court improperly disposed of these claims, and we need not address them. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

At all times relevant to this case, Appellees had a contract with Georgia's Office of Bar Admissions (OBA) to create and provide a computer program that would facilitate the entire bar admissions process. Specifically, the contract provided that Appellees "promise[d] to provide, and OBA promise[d] to pay for, a complete, customized, turn-key system of enterprise software for digitizing and electronically administering the entire bar admission process," which the contract referred to as the "Solution." The Solution was to contain two principal software components: (1) a "personalized information and communications portal . . . for use by Bar Applicants"; and (2) a "software tool for OBA's management and administration of *Applications for Certification of Fitness to Practice Law*, *Bar Examination Applications* and related back-office processes."

The software was used by the OBA to calculate bar exam scores and communicate individual results of the July 2015 and February 2016 bar exams to applicants. The Bar Applicants were not parties to the contract, nor were they ever directly contacted by Appellees.

### B. The Grading Errors

The Georgia bar exam—on which an applicant must achieve a passing score to be eligible to practice law in the state of Georgia—is a two-day test administered by the Board of Bar Examiners. The OBA provides administrative support to the Board of Bar Examiners, as well as to the Board to Determine

4

Character and Fitness.  The bar exam consists of three components: (1) the Multistate Bar Examination (MBE), a 200-question multiple choice test; (2) the Multistate Performance Test (MPT), which consists of two essay questions; and (3) four Georgia-specific essays.  An applicant must receive a minimum score of 270 (out of a possible 400 points) to achieve a "passing score" on the exam.

After the exam, the completed MBE answer sheets are sent to the National Conference of Bar Examiners to be graded by a machine.  The MBE scores are then sent to the OBA, and any applicant who does not achieve a score of at least 115 on the MBE component automatically fails the exam, meaning his or her essays are not submitted for grading.  The essays from all the applicants with qualifying MBE scores are then submitted for grading by the Board of Bar Examiners, and the completed scores are entered into a database.

If an applicant's total score is within five points below 270—in other words, if an applicant is within five points of achieving a passing score—his or her essays are regraded.  Once the essays are regraded, the new score is entered into the database.  It was during this "regrading process" that the alleged software error at issue in this case occurred.  The software, as designed, was "supposed to check to see if [the applicants] received a higher score on the regrade."  "If the original score is higher, it keeps that score; and if the regrade[] score is higher, it takes the regrade score and factors it into the calculation."  For both the July 2015 and

5

February 2016 exams, the scores on the regraded essays were not properly taken into consideration in calculating the scores.[2]  As a result, several individuals, including the Bar Applicants, who actually achieved a passing score based on their regraded essays were erroneously informed they had failed the bar exam.[3]

## II.  DISCUSSION

We review *de novo* a district court's grant of summary judgment, viewing "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party."  *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006).  Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

This appeal concerns two conclusions reached by the district court: (1) that the Bar Applicants' claims for ordinary negligence, strict liability, and negligent design are barred by Georgia's economic loss rule; and (2) that their claims for

---

[2] The Bar Applicants (and the OBA) claim this was the result of an error in ILG's software.  ILG disputes this, insisting the error was the result of the OBA's failure to execute properly the "steps" for calculating the updated scores.  However, this factual dispute is not relevant to our analysis here since, like the district court, we assume Appellees' software caused the grading error responsible for the falsely reported failures.

[3] The record indicates there were additional issues unrelated to the software at play regarding the February 2016 bar exam results, particularly the Georgia Supreme Court's decision to suspend the "115 Rule," which affected the number of essays identified for regrade.  Again, we assume, for purposes of our analysis, that the alleged software malfunction was responsible for the falsely reported failures on both exams.

defamation fail because they failed to show Appellees published the allegedly

defamatory statements—i.e., that the Bar Applicants failed the bar exam.  We

address each issue in turn.

## A.  *Georgia's Economic Loss Rule*

The economic loss rule limits the ability of individuals to recover in tort for

negligence where the duty breached arises solely out of a contract:

> Except as otherwise provided in this Code section, no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract . . . .

O.C.G.A. § 51-1-11(a).[4]  The rule has its foundation in cases limiting the ability of

contracting parties to sue one another, and it originally emerged in the area of

products liability.  *See City of Atlanta v. Benator*, 714 S.E.2d 109, 116 (Ga. Ct.

App. 2011).  But as the language of the statute suggests, the economic loss rule has

been expanded to bar recovery in *all* negligence-based tort actions where a plaintiff

seeks to recover purely economic losses, regardless of contractual privity.  *See,*

*e.g.*, *id.* at 116–17 (applying the economic loss rule to bar recovery in tort by third-

---

[4] Georgia law provides for exceptions to the economic loss rule in cases of accident or misrepresentation.  *Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.*, 724 S.E.2d 53, 59 (Ga. Ct. App. 2012) ("Georgia has recognized two exceptions to the economic loss rule: the misrepresentation exception and the accident exception.").  In the district court, the Bar Applicants argued their claims fell within the accident exception, but the district court rejected that argument, and the Bar Applicants have not challenged this aspect of the district court's ruling on appeal.  Therefore, we do not address it here.

party residents of the City of Atlanta who alleged they had been overcharged for water consumption after the City contracted with private vendors to install automatic meter-reading technology); *see also* O.C.G.A. § 51-1-11(a).

As we have noted, "the purpose of the rule . . . is to distinguish between those actions cognizable in tort and those that may be brought only in contract." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 949 (11th Cir. 1982).  In determining whether a particular plaintiff's claims sound in tort or contract, we look at two interrelated factors: (1) whether the plaintiff suffered any damage to her person or property; and (2) whether the alleged tortfeasor owed any duty to the plaintiff other than a duty imposed by the contract.  *See Bates & Assocs., Inc. v. Romei*, 426 S.E.2d 919, 921 (Ga. Ct. App. 1993) ("The rule does not prevent a tort action to recover for injury to persons or to property . . . because the duty breached in such situations generally arises independent of the contract."); *Bulmer v. S. Bell Tel. & Tel. Co.*, 317 S.E.2d 893, 895 (Ga. Ct. App. 1984) ("In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself." (internal quotation marks omitted and alterations adopted)).

The presence of these factors indicates a plaintiff "would have a right of action for the injury done independently of the contract," and the economic loss

8

rule therefore would not apply.  *See* O.C.G.A. § 51-1-11(a); *see also Flintkote*, 678

F.2d at 949 ("The distinction between these causes of action [tort versus contract]

does not depend upon the nature of the party being sued, but rather upon the nature

of the duty that has been breached, which in most instances can be ascertained

from the harm suffered.").

Here, we conclude the economic loss rule precludes the Bar Applicants'

claims against Appellees, as Appellees owed no duty to the Bar Applicants beyond

those imposed by the contract, and the Bar Applicants have not alleged or shown

any injury to their persons or property that would be recoverable in a negligence

action under Georgia law.

### 1.  Appellees' Duty to the Bar Applicants

Appellees here—ILG and Misman—owed no duty to the Bar Applicants

outside any duty imposed by the contract with the OBA.[5]  As the district court

noted, the only negligent acts identified by the Bar Applicants concern Appellees'

design of the software utilized by the OBA in scoring and reporting bar exam

results.  But Appellees' duty to provide, as the Bar Applicants have put it,

---

[5] Notably, it is unclear whether Appellees owed *any* duty at all to the Bar Applicants, even under the terms of the contract.  The district court concluded the Bar Applicants were not third-party beneficiaries to the contract, and the Bar Applicants have not challenged this ruling on appeal.  In any case, it is sufficient for us to say here that the only duties Appellees are alleged to have breached that arguably resulted in any harm to the Bar Applicants were duties imposed by the contract, regardless of to whom those duties were owed.

"software suitable to its intended purpose" is a duty solely imposed by Appellees'

contract with the OBA, not an independent duty that arose by operation of law.

The only affirmative duty the Bar Applicants identify on appeal is the

"general duty to all the world not to subject them to an unreasonable risk of harm."

But the Georgia Supreme Court has recently rejected the idea that any such broad,

general duty exists under Georgia law. *See Dep't of Labor v. McConnell*, 828

S.E.2d 352, 358 (Ga. 2019).

*McConnell* involved the inadvertent dissemination of the personal

information of 4,757 Georgia residents. *Id.* at 356. The Georgia Department of

Labor created a spreadsheet containing the name, social security number, home

telephone number, email address, and age of those residents, and a Department

employee inadvertently emailed the spreadsheet to approximately 1,000 recipients.

*Id.* The plaintiff "alleged that the Department owed a duty to [him] and the other

proposed class members to safeguard and protect their personal information," a

duty he claimed was "based on a purported common-law duty 'to all the world not

to subject [others] to an unreasonable risk of harm.'" *Id.* at 358 (quoting *Bradley

Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982)). The Supreme Court

explained, however, that the duty-to-the-world language cited by the plaintiff was

"not a correct statement of the law" and clarified that no such duty exists under

Georgia law. *Id.*

10

The Bar Applicants attempt to analogize this case to recent district court decisions finding Georgia's economic loss rule inapplicable in certain data-breach cases. Those rulings were based in part on the respective courts' conclusions that defendants in such cases owe a "common law duty to [consumers] to protect their personal credit card data from third party hacking." *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *7, *12–*14 (N.D. Ga. Mar. 5, 2018); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1173 (D. Minn. 2014) (discussing "the duty to safeguard information").

We are not persuaded these non-binding cases should affect our analysis here. Notably, both of the cases the Bar Applicants have identified were decided prior to the Georgia Supreme Court's decision in *McConnell*, which seriously calls into question the existence under Georgia law of an independent common-law duty to "safeguard and protect . . . personal information." *See McConnell*, 828 S.E.2d at 358. In any case, such a duty would not be implicated in this case, as Appellees are not alleged to have negligently safeguarded any of the Bar Applicants' personal information. Rather, the Bar Applicants' negligence claims all stem from Appellees' failure to exercise due care in the design of the software utilized by the OBA.

11

Accordingly, we conclude the Bar Applicants have failed to identify any duty breached by Appellees beyond those arising directly from the contract between ILG and the OBA.

### 2. *The Bar Applicants' Injuries*

Notwithstanding the absence of any identifiable non-contractual duty breached by Appellees, the Bar Applicants attempt to circumvent the operation of the economic loss rule by arguing they have sought damages arising out of injury to their persons.[6]  The existence of such damages would indicate "the duty breached . . . ar[ose] independent of the contract."  *Bates*, 426 S.E.2d at 921.

The Bar Applicants point to several injuries to their persons they allegedly suffered as the result of Appellees' negligence.  In particular, they point to: (1) reputational damage; and (2) headaches, nausea, and weight gain stemming from the emotional distress associated with being erroneously told they failed the bar exam.  The district court concluded damages for these alleged injuries, though ostensibly personal in nature, would not be recoverable in tort under Georgia law. We agree.

First, while reputational damage of the sort alleged by the Bar Applicants may be considered injury to the person, such damages under Georgia law "are

---

[6] The Bar Applicants also argued below that they suffered damage to their property—specifically, their right to practice law—but they have not reasserted this argument on appeal.

recoverable only in actions alleging intentional or wanton misconduct." *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 306 S.E.2d 340, 344 (Ga. Ct. App. 1983), *aff'd*, 311 S.E.2d 818 (Ga. 1984). Where a plaintiff seeks to recover damages "on the basis of negligence, alleging no willful or wanton misconduct[,] . . . . [he] is unable to recover general damages for damage to reputation." *Id.*; *see also Advanced Drainage Sys., Inc. v. Lowman*, 437 S.E.2d 604, 606–07 (Ga. Ct. App. 1993) (rejecting a plaintiff's argument that, because he suffered personal injury in the form of reputational damage, his tort claims were not barred by the economic loss rule). As there is no evidence in the record suggesting Appellees engaged in "intentional or wanton misconduct," *see Hamilton*, 306 S.E.2d at 344, the Bar Applicants could not recover for any alleged injury to their reputations, and such injury therefore cannot exempt their negligence claims from the economic loss rule.

Second, as to the physical ailments—headaches, nausea, weight gain, and the like—the Bar Applicants claim they suffered, those ailments all stemmed from the emotional distress associated with being told they failed the bar exam. Damages for such physical manifestations of psychic or emotional trauma are generally unrecoverable in negligence actions under Georgia's impact rule: "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a

13

physical injury." *Lee v. State Farm Mut. Ins. Co.*, 533 S.E.2d 82, 84 (Ga. 2000). The Bar Applicants have not claimed any direct physical impact as a result of Appellees' alleged negligent conduct, and they therefore cannot recover damages for any emotional distress or any resulting physical symptoms. *See Posey v. Med. Ctr.–W., Inc.*, 361 S.E.2d 505, 506 (Ga. Ct. App. 1987) ("[Plaintiffs] do not allege that the physical injury they suffered was the result of any direct physical contact; rather, the physical injury stems from the mental distress they suffered.  In the absence of any allegation of gross negligence or wil[l]ful and wanton conduct, however, such damages are not recoverable.").

The Bar Applicants acknowledge the impact rule, but argue the physical manifestations of their emotional distress they have identified—headaches, nausea, and weight gain—"in turn amplified the emotional distress."  Therefore, they insist, they should be able to recover for their "compounded emotional distress" consistent with the impact rule.  But the Bar Applicants cite no authority, and we are aware of none, allowing for recovery of such "compounded emotional distress."  In sum, we agree with the district court that the physical ailments the Bar Applicants identified do not constitute "injury to persons" for purposes of the economic loss rule, as these ailments flowed from economic injury and resulting emotional distress.

Because Appellees did not violate a legal duty independent of the contract between ILG and the OBA, and because the Bar Applicants have not alleged recoverable damages to their persons or property, the district court properly concluded the Bar Applicants' negligence-based claims were barred by Georgia's economic loss rule.

## B. Defamation

The Bar Applicants also challenge the district court's conclusion they could not sustain an action for defamation against Appellees because neither ILG nor Misman published any allegedly defamatory statement concerning the Bar Applicants.

Under Georgia law, "[a] cause of action for defamation consists of four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Boyd v. Disabled Am. Veterans*, 826 S.E.2d 181, 184 (Ga. Ct. App. 2019). As to the second element, "[t]he publication of the libelous matter is essential to recovery." *Id.* (alteration in original and internal quotation marks omitted) (quoting O.C.G.A. § 51-5-1(b)).

The "publication" the Bar Applicants point to is the "results" of the bar exam—that is, the list of names of those who passed the bar exam, which is published on the OBA's website.  On appeal, the Bar Applicants do not dispute it was the OBA, not Appellees, who actually published this list, but they argue Appellees are nonetheless liable because "the determination who passed and who failed was based on the faulty calculations performed by Appellees' software." Assuming this is true, it does not change the fact the allegedly defamatory information at issue here was "communicat[ed] to a third party" by the OBA, not Appellees.  *Id.*

To the extent the Bar Applicants argue the transmission of the incorrect bar results from the software to the OBA is itself a "publication," the Bar Applicants have cited no law that supports this contention.  And even assuming such a transmission could constitute a publication, Georgia law recognizes "an exception to the broad definition of publication."  *Terrell v. Holmes*, 487 S.E.2d 6, 8 (Ga. Ct. App. 1997).  "[W]hen the communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive [the] information, there is no publication of the allegedly slanderous material . . . ."  *Id.*  Under this doctrine, the software's communications to employees of the OBA—to the extent such

16

communications constitute "publication"—would be "intracorporate" and, therefore, nonactionable. *See id.*

The Bar Applicants argue this "ignores the fact that the results . . . were published online." But the subsequent publication of the pass list *by the OBA* is conceptually distinct from the intracorporate communication between the software and the OBA. Accordingly, we conclude the Bar Applicants failed to satisfy the publication element of their defamation claim, and the claim cannot succeed.

## III.  CONCLUSION

For the reasons discussed above, we affirm the district court's grant of summary judgment in favor of Appellees.

**AFFIRMED.**