**Martha Marie SOMER, Plaintiff-Appellant,**

v.

**Charles A. JOHNSON, M.D. P.A., a Florida Corporation, Aquiles Ascencios, and Sarasota County Public Hospital Board, d/b/a Memorial Hospital, Defendants-Appellees.**

**No. 81–6006.**

United States Court of Appeals, Eleventh Circuit.

May 16, 1983.

1474

John A. Lloyd, Jr., St. Petersburg, Fla., Edwin J. Bradley, Tampa, Fla., for plaintiff-appellant.

Lawrence J. Robinson, Linda B. Robinson, G. Hunter Gibbons, Sarasota, Fla., for defendants-appellees.

Before KRAVITCH, HENDERSON and ANDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

The plaintiff-appellant, Martha Somer, filed this diversity action for damages in the United States District Court for the Middle District of Florida against the defendants, Dr. Charles Johnson, Dr. Aquiles Ascencios and the Sarasota County Public Hospital Board. She alleged that the doctors were negligent in mistakenly diagnosing her abdominal pain as an ulcer, rather than a diverticulum, thereby resulting in unnecessary surgery. She also attributed negligence to the hospital in the selection and supervision of the physicians. During the trial, the district court directed a verdict favorable to the hospital and the jury returned a verdict for the two doctors.

Thereafter, Somer filed a motion for a new trial, asserting several grounds of error in the conduct of the trial. The district court denied the motion. She renews those contentions on appeal.

### I.

Somer first challenges the correctness of the district court's instructions to the jury pertaining to the legal standard of care applicable to health care providers under Florida law. The initial part of the instruction detailed the standard set forth in Fla. Stat.Ann. § 768.45 (West Supp.1983).[1] Over the plaintiff's objection, the court continued,

> [p]hysicians are not held liable, however, for honest errors of judgment. They are allowed a wide range in the exercise of their judgment and discretion.

1. Section 768.45(1) provides, in pertinent part, that

   [t]he accepted standard of care for a given health care provider shall be that level of care, skill, and treatment which is recognized by a reasonably prudent similar health care provider as being acceptable under similar conditions and circumstances.

To hold a physician liable, it must be shown that the course which he pursued was against the course recognized as correct by his profession.

Trial Transcript at 1435–36. Somer complains that this quoted segment of the charge is overly confusing and that it states a duty of care which conflicts with the norm outlined in the statute. In reviewing her contention, the inquiry is essentially twofold. First, we must determine whether the instruction accurately delineates the substantive law of Florida. If not, then we must decide as a matter of federal procedure if the instruction rises to the level of reversible error. *E.g., Van Cleef v. Aeroflex Corp.,* 657 F.2d 1094, 1099 n. 12 (9th Cir.1981); *Bartak v. Bell-Galyardt & Wells, Inc.,* 629 F.2d 523, 528 (8th Cir.1980); *Wright v. Albuquerque Auto-Truck Stop Plaza, Inc.,* 591 F.2d 585, 587 (10th Cir. 1979); *see also Southern Pacific Transportation Co. v. Smith Material Corp.,* 616 F.2d 111, 113–14 (5th Cir.1980); *see generally* 5A J. Moore, *Moore's Federal Practice,* ¶ 51.-02–1 (2d ed. 1982).

No clear statement of the duty of care imposed on physicians in Florida emerges from the relevant case and statutory authority. Thus, the resolution of the threshold issue requires a careful examination of several developments in that state's law governing medical malpractice. The instruction in controversy in this case had its genesis in a 1957 decision, *Bourgeois v. Dade County,* 99 So.2d 575 (Fla.1957). In that case, the Supreme Court of Florida observed, in *dicta,* that

> the science of medicine is not an exact science. Physicians are not to be held liable for honest errors of judgment and discretion. To hold one liable it must be shown that the course which he pursued was clearly against the course recognized as correct by his profession.

The corresponding portion of the district court's instruction echoed that language almost verbatim, merely substituting the term "physician" for the statute's more general phrase "health care provider." Trial Transcript at 1435.

99 So.2d at 577. Based on that language, the intermediate appellate courts of the state consistently approved instructions similar to the one challenged here. *See, e.g., Hickman v. Employers' Fire Insurance Co.,* 311 So.2d 778 (Fla.Dist.App.1975); *Potock v. Turek,* 227 So.2d 724 (Fla.Dist.App. 1969), *cert. denied,* 238 So.2d 106 (Fla.1970).

In 1976, the Florida legislature enacted an extensive statutory scheme concerning medical malpractice. Fla.Stat.Ann. §§ 768.40–768.56 (West Supp.1983). One provision, § 768.45, specifically codified the standard of care a "health care provider" must observe to avoid liability for malpractice:

"[T]he accepted standard of care for a given health care provider shall be that level of care, skill, and treatment which is recognized by a reasonably prudent similar health care provider as being acceptable under similar conditions and circumstances."

*See* Fla.Stat.Ann. § 768.45(1) (West Supp. 1983). The statute further enunciates two alternative definitions of "similar health care provider" which, in effect, distinguish between specialists and general practitioners. *See* Fla.Stat.Ann. § 768.45(2) (West Supp.1983); *see generally* French, *Florida Departs from Tradition: The Legislative Response to the Medical Malpractice Crisis,* 6 Fla.St.U.L.Rev. 423, 438 (1978). The enactment contains no reference to "honest errors of judgment" or a "wide range" of discretion.

About the same time, the Florida Supreme Court Committee on Standard Jury Instructions adopted a model instruction relating particularly to medical malpractice. Florida Standard Jury Instructions in Civil Cases 4.2(a) (Supreme Court Committee on Standard Jury Instructions in Civil Cases 1976). The suggested charge is similar to the standard of care declared by the legislature in § 768.45(1). It reads,

[n]egligence is the failure to use reasonable care. Reasonable care on the part of a [physician] is the use of that knowledge, skill and care which is generally used in similar cases and circumstances by [physicians] in communities having similar medical standards and available facilities.

Standard Jury Instructions 4.2(a). However, the Committee not only echoed the standard articulated in the statute, but it also expressly condemned the type of charge given by the district court in this case. According to the Committee, such a charge is "confusing, difficult of application and argumentative." [2] Standard Jury Instructions 4.2(a) comment 1.

Since the adoption of the new legislation and the promulgation of the standard instruction, the Florida intermediate appellate courts have uniformly expressed their disapproval of the older charge.[3] For example, in *Schwab v. Tolley,* 345 So.2d 747, 753 (Fla.Dist.App.1977), the court, citing the Supreme Court Committee's note, affirmed a trial court's refusal to include the "honest error" instruction. In *Webb v. Priest,* 413 So.2d 43, 46–47 (Fla.Dist.App. 1982), another court examined the correctness of a charge incorporating the "wide range" of discretion language, as well as the "clearly against the course recognized" standard. The trial judge in that case, like the district court here, combined those statements with an instruction similar to the Standard Jury Instruction 4.2(a). 413 So.2d at 46. On appeal, the court concluded that the charges constituted error and, when considered in conjunction with other errors committed during the trial, a cause for reversal. *Id.* at 46–47. The Florida appellate court characterized the instructions as "confusing in that they suggest conflicting standards of proof ... and ... confusing as to the duty of care owed by the physician." *Id.* at 47.

---

2. Contrary to the plaintiff's suggestion, the adoption of standard instructions prepared by a committee designated by the Florida Supreme Court does not necessarily adorn those charges with the force of precedent. While that court "generally" approves the instructions, it expressly refrains from determining whether they

"correctly state the law of Florida." *In re Standard Jury Instructions,* 198 So.2d 319 (Fla. 1967); *see also* Fla.R.Civ.P. Form 1.985.

3. None of those courts, however, have reconciled their holdings with *Bourgeois.*

The same Florida District Court of Appeals later reversed a judgment solely on the basis of such a charge. *Veliz v. American Hospital, Inc.,* 414 So.2d 226, 228 (Fla. Dist.App.1982). After giving Standard Jury Instruction 4.2(a), the trial court added the statement that "[t]he practice of medicine is not an exact science and nurses are not to be held liable for honest errors of judgment." 414 So.2d at 227. Finding the two formulations contradictory, the appellate court observed,

> [u]nder the instructions in this case, the jury could have found the defendant not liable because it believed the nurse on duty made an honest mistake of judgment while at the same time it also could have believed her conduct constituted a clear departure from the required standard of care.

*Id.* at 228.

Against this background, the defendants characterize the posture of the Florida law in this respect as a direct conflict between the supreme court of that state and the district courts of appeals. Thus, they reason, a federal court sitting in a diversity case is required to follow the pronouncements of the state's highest court. *See, e.g., Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir.1982). Here, however, we are confronted with a question never addressed by the Florida Supreme Court, i.e., whether the passage of § 768.45 by the state legislature in 1976 supplanted the common law duty of care articulated in *Bourgeois.* In the absence of such a judicial determination, we must determine how the state courts would resolve the issue. *See, e.g., Arceneaux v. Texaco, Inc.,* 623 F.2d 924, 926 (5th Cir.1980), *cert. denied,* 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981).

In Florida, it is well established that the legislature has the authority to abrogate the common law. *E.g., State v. Egan,* 287 So.2d 1, 6 (Fla.1973). Abrogation may be implied from an inconsistency between the legislative enactment and the former common law rule. *See, e.g., Ripley v. Ewell,* 61 So.2d 420, 421 (Fla.1952); *see also Wax v. Wilson,* 101 So.2d 54, 57 (Fla. Dist.App.1958). The question then becomes whether the scope of the duty established by the statute conflicts with the standard announced in *Bourgeois,* and reflected in the instructions presently under attack. The intermediate appellate courts of Florida have addressed this problem and concluded that the two expressions are indeed contradictory. *See Veliz,* 414 So.2d at 228; *Webb,* 413 So.2d at 47. Without persuasive data that the state's highest court would decide otherwise, those decisions are binding on a federal court sitting in a diversity case. *See, e.g., King v. Guardian Life Insurance Company of America,* 686 F.2d 894, 898 (11th Cir.1982); *Flintkote Co.,* 678 F.2d at 945. In short, we are convinced that § 768.45 supersedes the common law duty set forth in *Bourgeois.* Moreover, because the *Bourgeois* standard is inconsistent with the intervening statute, it constitutes an erroneous statement of Florida law.[4]

That conclusion does not end the matter. Federal procedural law governs whether an inaccurate instruction necessitates reversal. To determine the prejudicial effect of an incorrect statement of the law, the charge must be viewed in its entirety. *See, e.g., Allison v. Western Union Telegraph Co.,* 680 F.2d 1318, 1323 (11th Cir.1982). "When the instructions, taken

---

4. Our holding is limited to that part of the charge exonerating the defendants for "honest errors of judgment," the statement granting them a "wide range" of discretion, and the admonition that the jury must find the treatment "clearly against the course recognized as correct by his profession." In contrast, we reject the appellant's challenge to that portion of the instruction that states that "[t]he mere fact that a bad result followed the treatment which a defendant administered, does not, in

itself, require you to find that the defendant failed in the duty he or it owed to the patient." Admittedly, that charge has been criticized as "argumentative and negative." *See Schwab,* 345 So.2d at 753; *see also* Standard Jury Instructions 4.1 comment 1. Nevertheless, it is an accurate statement of current Florida law. *See* Fla.Stat.Ann. § 768.45(4) (West Supp. 1983) (expressly codifying that principle in the medical malpractice context).

together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Johnson v. Bryant,* 671 F.2d 1276, 1280 (11th Cir.1982). To justify a reversal, the court must be "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1372 (5th Cir. 1981).

■ The instruction at issue in this case creates a genuine probability that the jury was in fact misled to the detriment of the plaintiff. The jury could have found, for example, that the defendants failed to exercise the level of care acceptable to a "similar health care provider," but at the same time, that their mistake, if any, resulted from an "honest error of judgment." *See Veliz,* 414 So.2d at 228. The possibility of such a misapplication is enhanced by the language of the instruction. After reciting the correct statutory duty, the trial judge then admonished that "[p]hysicians are not held liable, *however,* for honest errors of judgment." Trial Transcript at 1435–36. The use of the word "however" suggests that those statements qualify or relax the standard of liability enunciated earlier. In effect, the very wording of the charge invited the jury to make impermissible alternative findings that the defendants had violated the appropriate standard but conformed to the incorrect one. Under those circumstances, the possibility that the jury may have employed the wrong criterion of liability to exonerate the defendants requires a new trial.[5] *See Johnson,* 671 F.2d at 1281; *Gardner v. Wilkinson,* 643 F.2d 1135, 1137 (5th Cir.1981).

## II.

■ The remaining assignment of error deals with the district court's denial of Somer's request for certain documents in

the hospital's records. During discovery, the plaintiff sought access to various hospital records including the personnel files of Ascencios and Johnson, as well as information concerning the hospital's internal reviews. When the hospital refused to produce the requested documents, the plaintiff filed a motion to compel discovery. The district court granted the motion to the extent that it sought production of the doctors' personnel applications. At the same time, the court denied the request for all written evaluations, relating both to the doctors and to the hospital, on the grounds that such records are privileged under Florida law. *See* Fla.Stat.Ann. § 768.40(4) (West Supp.1983). On appeal, the plaintiff disputes the privileged status of the documents, and further contends that the reports would have furnished sufficient evidence to preclude a directed verdict for the hospital.

Fed.R.Evid. 501 provides, in pertinent part, that

> in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Additionally, Fed.R.Civ.P. 26(b)(1) only permits discovery of matter which is "not privileged." State law also controls the privileged nature of material sought in discovery in a diversity action. *Hyde Construction Co. v. Koehring Co.,* 455 F.2d 337, 340 (5th Cir.1972); *see also Dixon v. 80 Pine Street Corp.,* 516 F.2d 1278, 1280 (2d Cir. 1975).

The source of the state privilege implicated in this case is Fla.Stat.Ann. § 768.40(4) (West Supp.1983). That section provides that

> [t]he proceedings and records of committees as described in the preceding subsec-

---

**5.** In light of this determination, we need not address Somer's remaining two contentions against the doctors that the district court abused its discretion (1) in refusing to grant a continuance and (2) in permitting Dr. Johnson

to present an expert witness not disclosed prior to trial. A new trial necessitated by the erroneous jury instructions will alleviate the prejudice, if any, that may have resulted from these occurrences.

tions shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee . . .

The pertinent "committees" include those bodies "formed to evaluate and improve the quality of health care." Fla.Stat.Ann. § 768.40(1) (West Supp.1983). The plaintiff does not deny that the records she seeks fall within the ambit of this provision. Rather, she argues that the statute merely sets forth a state discovery rule, which because of its alleged procedural nature, does not affect discovery in a federal action. *Cf. Dixon,* 516 F.2d at 1280 (New York rule which prescribes the showing necessary for discovery against a non-party is not binding in federal court).

To the contrary, § 768.40(4) creates a substantive privilege for such records, applicable in any malpractice action. Not only does the rule bar discovery of protected materials, but it also precludes their introduction into evidence in a civil action. These two limitations are the customary indicia of a privilege. *See generally* 4 J. Moore, *Moore's Federal Practice* ¶ 26.60 (2d ed. 1982). Of greater significance, the legislative policy embodied in the provision is the customary concern underlying most privileges. Section 768.40(4) reflects a leg-

islative attempt to encourage effective "self-policing" within the medical community by removing the inhibitions that would necessarily follow if those "efforts could later be used in medical malpractice cases." *See, e.g., Auld v. Holly,* 418 So.2d 1020, 1024 (Fla.Dist.App.1982); *Good Samaritan Hospital Association, Inc. v. Simon,* 370 So.2d 1174, 1176 (Fla.Dist.App.1979). To that end, the protection seeks to promote candor among those persons conducting and participating in evaluations of medical care. *Good Samaritan Hospital,* 370 So.2d at 1176.[6] Therefore, because § 768.40(4) has all the characteristic attributes of a privilege, the plaintiff's attempt to label the statute as a state discovery device lacks merit.[7] *Cf. Karp v. Cooley,* 493 F.2d 408, 425 (5th Cir.1974) (treating state law, which protected from subpoena "the records and proceedings" of any medical organization, as privileged), *cert. denied,* 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974).

Accordingly, the judgment in favor of the hospital is AFFIRMED. The judgment for the doctors, Ascencios and Johnson, is REVERSED and REMANDED for a new trial consistent with this opinion.

---

**6.** The belief that important public interests are furthered by unhindered communications in some contexts underlies most privileges. *See, e.g., Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39, 51 (1976), (attorney-client privilege intended "to encourage clients to make full disclosure to their attorneys"); *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186, 195 (1980) (priest-penitent privilege protects disclosures to spiritual counselors); *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 647 (1957) (informant privilege recognizes "public interest in protecting flow of information"). In fact, in his criteria for determining the justification for a privilege, Wigmore focused precisely on that concern. 8 Wigmore, *Evidence* § 2285 (McNaughton rev. 1961).

**7.** The plaintiff's reliance on *Gadd v. News Press Publishing Co.,* 412 So.2d 894 (Fla.Dist. App.), *cert. denied,* 419 So.2d 1197 (Fla.1982), is misplaced. In that case, the court considered a request for physician personnel rec-

ords in a factual setting outside of the scope of § 768.40(4). There, the demand was not made in connection with a "civil action" against a health care provider. 412 So.2d at 895. Under those circumstances, the court refused to exempt a public hospital from the requirements of Florida's Public Records Law, Fla.Stat.Ann. § 119.01–119.12 (West 1982). *Id.* That statute affords the public access to the records of various public institutions and agencies. *See* Fla. Stat.Ann. § 119.07 (West 1982). Nonetheless, that case does not nullify the confidentiality of such records when sought in a medical malpractice action. 412 So.2d at 896; *see also City of Williston v. Roadlander,* 425 So.2d 1175, 1177 (Fla.Dist.App.1983). Moreover, contrary to *Gadd,* the court in *City of Williston* raised the possibility, without deciding the question, that the confidentiality may extend beyond the civil action context "in order to prevent nullification of the specific discovery prohibition." 425 So.2d at 1177 n. 2.