565 So.2d 50 (1990)
John Lee SASSER, as Administrator of the Estate of Ollie Powers Sasser, Deceased
v.
Dr. Francis CONNERY.
Dr. Francis CONNERY
v.
John Lee SASSER, as Administrator of the Estate of Ollie Powers Sasser, Deceased.
88-1113, 88-1171.
Supreme Court of Alabama.
April 6, 1990.
Rehearing Denied June 15, 1990.
Alex W. Newton of Hare, Wynn, Newell & Newton and R. Gordon Pate of Pate, Lewis & Lloyd, Birmingham, for appellant/cross-appellee.
W. Stancil Starnes and W. Hill Sewell of Starnes & Atchison, Birmingham, for appellee/ cross-appellant.
MADDOX, Justice.
The plaintiff's appeal presents one question: Whether the trial court, in a medical malpractice case, erroneously instructed the jury that "where the proper course [of treatment] is subject to reasonable doubt, a physician is not liable for an error in judgment, an honest mistake." The defendant's cross-appeal presents the issue of whether he was entitled to a directed verdict because the plaintiff failed to present any expert medical testimony that the defendant's alleged negligence proximately caused the death of Ollie Powers Sasser. Because we find that the plaintiff did not present any expert medical testimony that the doctor's alleged negligence probably caused Ollie's injuries and death and that the defendant was therefore entitled to a directed verdict, we do not address the plaintiff's issue concerning the jury charge.

FACTS
John Lee Sasser, as administrator of the estate of Ollie Powers Sasser, filed a wrongful death action against Dr. Francis Connery. The plaintiff alleged that Dr. Connery's failure to conduct certain tests on Ollie resulted in her eventual death from cancer, a cancer that plaintiff alleges could have been effectively treated if those tests had been conducted and the cancer detected earlier. At the close of the plaintiff's case and at the close of all the evidence, Dr. Connery moved for a directed verdict; both times, the trial court denied that motion. The jury returned a verdict in favor of Dr. Connery.

I
"In medical malpractice cases, the plaintiff must prove negligence through the use of expert testimony, unless an understanding of the doctor's alleged lack of due care or skill requires only common knowledge or experience." Monk v. Vesely, 525 So.2d 1364, 1365 (Ala.1988). As this Court *51 stated in Peden v. Ashmore, 554 So.2d 1010 (Ala.1989):
"`A directed verdict is proper where there is a complete absence of pleading or proof on an issue or issues material to a cause of action. Shellnutt v. Randolph County Hospital, 469 So.2d 632 (Ala.Civ.App.1985).... When a directed verdict motion is made, the evidence should be viewed in the light most favorable to the opposing party, and if a reasonable inference can be drawn against the moving party, then the trial court should deny the motion. Turner v. People's Bank of Pell City, 378 So.2d 706 (Ala.1979).'"
554 So.2d at 1012-13 (quoting Dobbs v. Smith, 514 So.2d 871, 872 (Ala.1987)). The Court went on to state:
"The plaintiff must adduce some evidence that the alleged negligence probably caused the injury or death:
"`In a medical malpractice case, in order to find liability there must be more than a mere possibility that the alleged negligence caused the injury. Williams v. Bhoopathi, 474 So.2d 690, 691 (Ala.1985). There must be some evidence that that negligence probably caused the injury. Orange v. Shannon, 284 Ala. 202, 206, 224 So.2d 236, 239 (1969)'

"Howard v. Mitchell, 492 So.2d 1018, 1019 (Ala.1986)."
554 So.2d at 1013 (emphasis original).
Because this lawsuit was filed prior to June 11, 1987, the "scintilla rule" applies to this case. See Ala.Code 1975, § 12-21-12. Sasser did have experts testify, but none of them testified that Dr. Connery's alleged negligence caused any injury to the deceased. None of the experts could say that if Dr. Connery had conducted the tests in question and had found the cancer, then Ms. Sasser's life would have been saved or even extended. One of the plaintiff's experts, Dr. Goldstein, testified that it was equally probable that an early diagnosis of Ollie's cancer would not have changed the outcome or extended her life; he stated that his testimony was "speculation" and that he could not say whether with the tests she would have lived longer. Another of the plaintiff's experts, Dr. Addison, could not testify as to any medical probability that an earlier diagnosis would have changed the outcome or would have extended Ollie's life. In Peden, the experts also testified that their testimony was "speculation" and that while they disagreed with the defendant's treatment, they could not say that it made a difference one way or the other. Here, Sasser did not produce a scintilla of evidence that Dr. Connery's alleged negligence probably caused Ollie's death or probably caused her life to be shortened. Without this scintilla of evidence that Dr. Connery probably caused Ollie's death or that earlier diagnosis probably would have extended her life, Sasser failed to meet the burden of proof, and the case was improperly submitted to the jury.

II
Although the trial court erred in submitting this case to the jury, the jury returned a verdict for Dr. Connery. We find that it would be a waste of judicial resources for this Court to reverse the judgment for Dr. Connery entered pursuant to a favorable jury verdict and remand the cause just to have the trial court enter another judgment for him. Therefore, the judgment in favor of Dr. Connery is due to be affirmed. Because of that holding, we do not address the plaintiff's argument that the trial court improperly instructed the jury.
88-1113 AFFIRMED.
88-1171 AFFIRMED.
ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., and JONES, J., concur specially.
HORNSBY, Chief Justice (concurring specially).
I concur with the majority's resolution of this matter. However, because I am deeply concerned by a particular issue that is not addressed in the majority opinion, I feel that it is necessary to state my views.
*52 The majority has not addressed the issue of whether a doctor should be entitled to have the jury instructed that it may not find against him if the plaintiff's injuries resulted from an "honest mistake" in exercising his professional judgment. Because I am concerned that such a jury charge will mislead the jury as to the applicable standard of care, I concur specially to express my views on the propriety of allowing such a jury charge in medical malpractice cases.
I am persuaded by the fact that this state has recently adopted a Medical Liability Act. Ala.Code 1975, § 6-5-480 et seq. The standard of care to be exercised by a physician in this state is clearly spelled out in § 6-5-484, which provides:
"(a) In performing professional services for a patient, a physician's, surgeon's or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case. In the case of a hospital rendering services to a patient, the hospital must use that degree of care, skill and diligence used by hospitals generally in the community.
"(b) Neither a physician, a surgeon, a dentist nor a hospital shall be considered an insurer of the successful issue of treatment or service."
This statutory standard does not include any "good faith" or "honest treatment" component. Thus, a jury charge that would allow the defendant to put before the jury the issue of his good faith or his honest belief that a particular course of treatment was proper confuses the proper standard of care in a medical malpractice case.
It should be beyond argument that a particular course of conduct may be honestly believed to be proper on a subjective level and yet evidence negligence by a failure to meet the proper standard of care. It is my contention that the jury charge at issue in the present controversy offers great opportunity for confusion on the part of a jury. I am persuaded in my analysis of this issue by the fact that during the past decade ten American jurisdictions have specifically disapproved of the "good faith" or "honest mistake" jury charge in medical malpractice cases.
In Somer v. Johnson, 704 F.2d 1473 (11th Cir.1983), the United State Court of Appeals for the Eleventh Circuit was confronted with a case not unlike the one now before us. In that case, the plaintiff sued two doctors, alleging malpractice under Florida law; the plaintiff objected to a jury instruction stating that doctors are not liable for "honest errors of judgment." The Somer court noted that Florida had enacted a statute that codified the standard of care expected of doctors, and stated:
"The instruction at issue in this case creates a genuine probability that the jury was in fact misled to the detriment of the plaintiff. The jury could have found, for example, that the defendants failed to exercise the level of care acceptable to a `similar health care provider,' but at the same time, that their mistake, if any, resulted from an `honest error of judgment.' The possibility of such a misapplication is enhanced by the language of the instruction."
Somer, 704 F.2d at 1478 (citation omitted).
That same concern has been echoed by other courts. See, e.g., Rogers v. Meridian Park Hospital, 307 Or. 612, 772 P.2d 929 (1989) (error in judgment rule disapproved where controversy involved different treatment choices); Ouellette v. Subak, 391 N.W.2d 810 (Minn.1986) (affirming lower court's refusal to give a charge on good faith error in choosing among alternative treatments as possibly confusing); Magbuhat v. Kovarik, 382 N.W.2d 43 (S.D.1986) (plaintiff may be required to prove that doctor acted with less than good faith under charge on good faith error); Watson v. Hockett, 107 Wash.2d 158, 727 P.2d 669 (1986) (word "honest" should be deleted from the charge on "honest mistake"); Wall v. Stout, 310 N.C. 184, 311 S.E.2d 571 (1984) (holding that honest error charge is potentially confusing and should not be part of jury charge on standard of care due from a doctor); Teh Len Chu v. Fairfax *53 Emergency Medical Associates, 223 Va. 383, 290 S.E.2d 820 (1982) ("terms such as `honest mistake' and `bona fide' error have no place in instructions dealing with negligence in medical malpractice cases"); Veliz v. American Hosp., Inc., 414 So.2d 226 (Fla.Dist.Ct.App.1982) (holding that a charge based on nurse's honest error in judgment is erroneous because it is confusing and misstates applicable standard of proof).
In Logan v. Greenwich Hospital Ass'n, 191 Conn. 282, 465 A.2d 294 (1983), the court stated:
"[T]o use such a phrase [that a doctor would not be liable for a `bona fide error in judgment'] in a charge upon negligence serves only to confuse a jury by implying that only an error in judgment made in bad faith can be actionable. The central issue in the ordinary negligence case is whether the defendant has deviated from the required standard of reasonable care, not his mental state at the time of the conduct which constitutes the deviation."
191 Conn. at 298-99, 465 A.2d at 303.
In the case of Teh Len Chu v. Fairfax Emergency Medical Associates, 223 Va. 383, 290 S.E.2d 820 (1982), the court stated:
"[W]e believe that terms such as `honest mistake' and `bona fide error' have no place in jury instructions dealing with negligence in medical malpractice cases. The terms not only defy rational definition but also tend to muddle the jury's understanding of the burden imposed upon a plaintiff in a malpractice action. If use of the terms were permitted, it would be appropriate to ask: Must a plaintiff prove a `dishonest mistake' or a `bad faith error' in order to recover? The obvious negative answer reveals the vice in the use of the terms."
The practice of allowing this jury charge raises a very serious question: "Are other members of society liable for negligent acts, even though they may be the result of an `honest error in judgment?'" Watson v. Hockett, 42 Wash.App. 549, 712 P.2d 855 (1986). Is a person driving down the highway liable for an injury he negligently causes regardless of whether that injury is caused by a "good faith" error in judgment? Id., 42 Wash.App. at 556-57, 712 P.2d at 860.
Because I believe that the challenged jury charge may allow juries to find that the defendant acted negligently but that the defendant's negligence resulted from a good faith error on the defendant's part, I would hold that this jury charge should be abandoned. Any use of this charge in a medical malpractice case should be considered prejudicial error.
JONES, Justice (concurring specially).
I concur in the opinion of the Court and I also concur in the Chief Justice's special concurring opinion. Additionally, I offer the following language, which I believe is an appropriate jury instruction in an alternative-treatment case:
"You have heard evidence in this case concerning alternative methods of treatment. If you are reasonably satisfied from the evidence that the defendant, in his treatment of the plaintiff, had available to him different or alternative methods of treatment, and that each of those methods was within the standard of care practiced by other physicians in the medical community, the mere fact that a bad result was obtained by use of the method employed by the defendant doctor cannot be used by you as a basis for imposing liability on the defendant. Stated another way, the law recognizes that, in determining whether the treating physician is liable for malpractice, the defendant is permitted to show, in his defense, if he can, that in treating the plaintiff he exercised his professional judgment in choosing one particular method of treatment as opposed to another method, when both methods of treatment are recognized and accepted by the medical community. On the other hand, you may impose liability if you are reasonably satisfied from the evidence that the method employed by the defendant in his treatment of the plaintiff is below the applicable standard *54 of care, as I have previously explained that standard to you."