OPINION OF THE COURT
GREENBERG, Circuit Judge.
I. INTRODUCTION
These matters come on before this Court on consolidated appeals from judgments of conviction and sentence entered on October 27, 2008, and certain earlier orders in these criminal proceedings in the District Court. Following the defendants’ convictions, the Court imposed custodial sentences followed by periods of supervised release on each defendant. For the reasons that follow, we will affirm.
II. BACKGROUND
At the times material to this case, defendants, now appellants, David and Anna Delle Donna, who are husband and wife, were public officials in Guttenberg, Hudson County, New Jersey, David being the mayor and Anna being a member of the Guttenberg Planning Board.[1] (We will refer to appellants as “David” and “Anna” because of their common last name.)
This case focuses on the interplay between the actions of a local bar-owner, Luisa Medrano, and her sister Eduviges (“Duvi”) Medrano, on the one hand, and appellants on the other hand. (We will refer to the Medranos as “Luisa” and “Duvi,” again because of their common last name.) Luisa owned several bars in and around Guttenberg from which she derived a substantial income.[2] In 2002 one of Luisa’s bars, the Puerta de la Union, ran into regulatory trouble with Guttenberg’s Alcoholic Beverage Commission (“ABC”), of which David as mayor was a member. Consequently, on May 4, 2002, there was a hearing that Luisa and Duvi attended before the ABC at which the bar’s license was subject to suspension.
During a break in the ABC proceedings, Duvi met Anna at a water fountain and the two women engaged in a brief conversation. Following the conversation Duvi informed Luisa that Anna was the mayor’s wife and it might be good for business if they could befriend her. Luisa agreed as she reasoned that her generosity to Anna would lead to the Delle Donnas helping *444 her and that any money she spent on the Delle Donnas would be a small price to pay if it kept her bar in good standing. Consequently, the Medrano sisters intentionally set out to befriend Anna in the hope that she and her husband would perform favors in their capacities as public officials benefitting Luisa’s business.
Over the course of the next few years, Anna and Duvi became fast friends and Anna and Luisa also became friends, though to a less intense extent. The circumstance that Anna is fluent in Spanish, Luisa speaks only Spanish, and Duvi speaks Spanish and hesitant English furthered the development of the relationships. On the other hand, David does not speak Spanish and therefore never conversed with Luisa directly. Luisa testified that during the course of her friendship with Anna, she gave Anna numerous gifts including a sapphire necklace, hundreds of dollars in gift cards, liquor, face cream, a garage storage system, half of the cost of an expensive dog, thousands of dollars for gambling in Atlantic City, and money for breast surgery. The Delle Donnas denied receiving some of these items but David admitted that he knew that Luisa gave some of the smaller gifts to Anna and that Luisa had paid for half of the cost of the dog.[3]
The gift-giving, however, was not entirely one-way, and the record clearly shows that Anna thought of Duvi and Luisa as genuine friends. Anna gave Luisa a pocketbook, clothing, and earrings as gifts and Duvi was a regular guest at the Delle Donna household. The Delle Donnas were christened as godparents to Duvi’s two children, and the Delle Donnas gave expensive gifts to mark the occasion. When Duvi’s son needed emergency surgery to save his life, the Delle Donnas loaned Duvi the $5,000 that she needed. Accordingly, it is accurate to say that this case differs from the typical political corruption case in which the defendant public official receives benefits from a person seeking favors but does not reciprocate at his or her own expense.
Luisa testified that Anna promised to use her position on the planning board to assist her and that Anna promised to “speak with her husband” to help her businesses. App. at 921, 942, 948. Thus, when Luisa needed a building permit to convert a bar into an apartment, Anna promised to speak with her husband about helping her. In fact, Anna helped Luisa fill out an English-language application for the permit and then accompanied Luisa when she submitted the application to the building code supervisor. Two days later, David asked the code supervisor whether the permit was going to issue and then, one year later, asked how the process was going. The building inspector testified that the mayor and his wife showed a unique interest in Luisa’s project with his questions. In another matter the town garbage inspector testified that David asked him to “take care of’ several tickets that had been issued to Luisa, a request that the inspector thought was improper. David told a friend that he had to take care of Luisa’s tickets because his wife was pestering him about it.
*445 David points out that there were two ABC hearings during his time as mayor directly involving Luisa’s businesses, one involving discipline and one dealing with a license application, and in both cases he recused himself. David, however, did not recuse himself when Luisa’s liquor licenses were up for annual renewal because the Guttenberg municipal attorney advised him that he did not need to recuse in such “pro forma” matters.
After the government arrested and interrogated Luisa it began investigating the Delle Donnas. That investigation led to the return of a superseding indictment charging the Delle Donnas with five counts of criminal conduct: conspiracy to commit mail fraud under 18 U.S.C. §§ 1341, 1346, 1349 (Count One); mail fraud under 18 U.S.C. §§ 1341, 1346 (Count Two); conspiracy to commit extortion under color of official right under 18 U.S.C. § 1951(a) (Count Three); filing a false income tax return with respect to rental income under 26 U.S.C. § 7206(1) (Count Four); and filing a false income tax return with respect to gifts received under 26 U.S.C. § 7206(1) (Count Five). The Delle Donnas made a pretrial motion in which they asked the Court to sever Count Four from the indictment for the trial as they argued that the count was not related factually to the remaining counts. At the same time the Delle Donnas asked the Court to sever Count Five so that the tax counts could be tried together. The Court, however, denied this request in an opinion and order dated March 14, 2008, and thus the Court tried all five counts against both defendants at a single trial.
At the conclusion of a lengthy trial at which the Delle Donnas testified, the Court, over Anna’s objection, gave an instruction explaining when a defendant with a mixed motive for her conduct, partially corrupt and partially neutral “like friendship,” can be guilty of extortion. Thereafter the jury acquitted the Delle Donnas on the mail fraud counts (Counts One and Two) but returned a guilty verdict against them on the extortion and tax evasion counts (Counts Three, Four, and Five). The Delle Donnas filed a joint motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on the extortion count (Count Three), but the District Court denied this request in an order dated April 29, 2008.
At sentencing, the District Court calculated similar advisory guideline sentencing ranges for David and Anna except that the Court enhanced David’s sentence by 2 levels under U.S.S.G. § 3C1.1 for obstruction of justice by reason of its belief that David must have committed perjury during his testimony on the conspiracy and tax counts because the jury did not accept that testimony. The Court’s sentencing calculations led to it determining David’s advisory guideline sentencing range as 63 to 78 months, based on an offense level of 26 and a criminal history category of I. Anna’s advisory guideline sentencing range was 51 to 63 months, based on an offense level of 24 and a criminal history category of I. The Delle Donnas argued that the advisory guideline sentencing ranges produced unduly severe sentences when compared to the sentences imposed in the district court in New Jersey on similarly situated defendants. In support of this contention the Delle Donnas submitted a list of 41 public figures convicted of criminal offenses involving public corruption in the District of New Jersey on whom district courts recently had imposed sentences below the Delle Donnas’ guideline sentencing range. The Delle Donnas argued that the Court when sentencing them should take these other sentences into account pursuant to 18 U.S.C. § 3553(a)(6) which provides that a court should avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *446 offenses. The Court reviewed the list of allegedly similar cases but concluded that many of the crimes for which the other defendants had been convicted were not similar to the Delle Donnas’ offenses and refused to vary from their guideline sentencing ranges by reason of those cases.
The District Court imposed custodial sentences of 51 months on both Anna and David on the extortion conspiracy count and 36-month custodial sentences on both tax counts, all custodial sentences to run currently, to be followed by concurrent two-year terms of supervised release on each count. The Court recognized that David’s suggested advisory guideline sentencing range was higher than Anna’s but concluded that “a fairer and more equitable result will be achieved by issuing both Anna and David Delle Donna the same sentence.” App. at 3657. In addition, the Court fined each defendant. The Court subsequently issued final judgments of conviction and sentence for Anna and David on October 27, 2008.
The Delle Donnas separately appealed but the clerk of our Court consolidated their appeals for briefing and argument. The Delle Donnas challenge the District Court’s (1) refusal to sever the rental tax evasion charges contained in Count Four, (2) use of the term “like friendship” in the jury instructions when addressing when a defendant acting with a partially corrupt and partially neutral motive for his or her actions can be guilty of extortion, (3) denial of their Rule 29 acquittal motion, (4) enhancement of David’s guideline sentencing range for obstruction of justice, and (5) refusal to reduce the sentences to conform to lower sentences given to similarly situated New Jersey public figures.
III. JURISDICTION AND STANDARD OF REVIEW
The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. §§ 1291, 3742(a). We will not reverse a criminal conviction by reason of insufficiency of the evidence unless the evidence viewed in the light most supportive of the fact-finder’s decision cannot support the verdict. United States v. Casper, 956 F.2d 416, 421 (3d Cir.1992). But we review questions of law, such as the legal appropriateness of a join-der of offenses, de novo. United States v. Thornton, 1 F.3d 149, 152 (3d Cir.1993). We review questions over which a district court has discretion, such as the discretionary joinder of offenses, to determine if the court has abused that discretion. United States v. Lore, 430 F.3d 190, 205 (3d Cir.2005).
IV. DISCUSSION
A. Denial of Motion to Sever Rental Tax Evasion Charge (Count Four)
The Delle Donnas owned numerous residential properties that they rented to lower-income tenants, several of whom testified at trial. These tenants testified that they received housing assistance which paid most of their rent and that they paid the remainder of their rent directly to the Delle Donnas. The government argued that the Delle Donnas did not report all of this rental income on their tax returns, and the grand jury charged the Delle Donnas with tax evasion for failing to do so (Count Four).
As we have indicated, before the trial, the Delle Donnas made a motion to sever Count Four from the indictment, arguing that as a matter of law it should be severed because it was prejudicial to try a charge for commission of what essentially was a completely separate crime at the same time as the other charges. They also contended that the District Court as a matter of discretion should sever Count Five from Counts One, Two, and Three so that the two tax counts could be tried *447 together. The Delle Donnas argued that a jury might find them guilty of not reporting their rental income for income tax purposes and then conclude that the Delle Donnas similarly must be guilty of the other charges (or vice versa). This fear was not unfounded because at the trial the government asserted that each count of the indictment reflected on every other count of the indictment, thereby making the exact connection that the Delle Donnas anticipated. Indeed, during its opening statement the government explained that the Delle Donnas had not reported their rental income on their tax returns and then told the jury, “[YJou’ll hear that in the same way that the Defendants were not reporting to the State of New Jersey all the cash contributions and gifts that they got from Luisa Medrano, they were also not reporting the full scope of their income to the Federal Government.” App. at 183. During closing arguments, the government reiterated that “all five counts in the indictment” concerned “corruption, concealment, and fraud.” App. at 3120.
The government opposed the Delle Don-nas’ motion to sever Count Four and Count Five. It contended that: (1) Count Three alleged a conspiracy to commit extortion; (2) Count Five alleged that the Delle Donnas evaded taxes when they did not report the extortion payments and therefore Count Five properly was joined to Count Three; and (3) Count Four properly was joined to Count Five because both counts charged tax evasion. The government also pointed out that the Delle Donnas’ accountant was scheduled to testify, so it would not complicate the trial unnecessarily to inquire into the Delle Donnas’ rental income at a trial on the other counts. Citing judicial economy, the Court rejected the Delle Donnas’ request to sever Count Four and Count Five but it did charge the jury that each count alleged a separate crime and that the jury should consider each count separately.
Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of offenses and Rule 8(b) governs the joinder of defendants. Though, in terms, Rule 8 suggests that Rule 8(a) should govern here, we have held that Rule 8(b) should be applied to cases involving multiple defendants even when the issue is the joinder of offenses. United States v. Irizarry, 341 F.3d 273, 287 (3d Cir.2003). Rule 8(b) permits joinder if the two offenses relate to “the same act or transaction, or ... the same series of acts or transactions.” Nevertheless, inasmuch as the strictures of Rule 8 are not of constitutional magnitude, even if joinder is not proper under Rule 8 there will not be a reversible error unless the mistake had a substantial effect on the outcome of the proceedings. United States v. Lane, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). But even in cases in which it is technically proper to have a joinder under Rule 8, a defendant may move for a severance under Federal Rule of Criminal Procedure 14 to prevent prejudice. The Delle Donnas made a Rule 14 motion in this case, so both Rule 8 and Rule 14 are implicated on this appeal.
Though we recognize that the government’s contention that Count Four is based on the same tax evasion statute as Count Five and that Count Five is related to Count Three is correct, and though we are well aware that joint trials promote efficiency in the pursuit of justice, United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005), we think that it would be superficial to end our inquiry into the joinder and severance questions with these observations. In its essence the superseding indictment alleges in Count Three that the Delle Donnas promised official favors in exchange for money and gifts. Clearly, the fact that they were not reporting all of their rental income for tax purposes hardly is related to the basic circumstances of Count Three, and it is troublesome when the government plays “eonnect-the-dots” *448 in the manner it has done in this case. By-linking one crime to another, statute by statute or subject by subject, the government can combine several cases in one. See United States v. Gentile, 60 F.R.D. 686, 688 (E.D.N.Y.1973) (“[T]he government has an obligation to allege more than that the offenses are of a similar nature or that there are common participants.”). Such linking permitted the government to add charges related to the Delle Donnas’ conduct as landlords to unrelated extortion activity. The connecting of the dots is obvious because the charges against the Delle Donnas as landlords involved a failure to report income on rent under Count Four, which relates to failure to report income on the fruits of the extortion under Count Five, which, in turn, relates to the political corruption at issue in the case charged under Count Three.
Yet we will not reverse a conviction by reason of misjoinder of offenses unless the misjoinder had a substantial effect on the outcome of the proceedings. Lane, 474 U.S. at 449, 106 S.Ct. at 732. We think that here the misjoinder, assuming that there was one, could not have had a substantial effect on the trial. The rental income issue was relatively simple, and there was very little testimony devoted to it during the lengthy trial. See Lore, 430 F.3d at 205 (jury easily could compartmentalize separate charges when extra charge was “relatively straightforward and discrete, not involving overly technical or scientific issues”). The District Court explained to the jury that each count of the indictment alleged a separate crime and the jury clearly understood this fact, as demonstrated by the circumstance that, after five days of deliberation, it returned not guilty verdicts on Counts One and Two and guilty verdicts on the remaining counts. This jury performed its function with great care. Therefore, we will reject the Delle Donnas’ challenge to the joinder of Count Four under Rule 8. Furthermore, we do not think that the District Court abused its discretion under Rule 14 by refusing to sever Count Four when that refusal did not have a substantial effect on the trial. See United States v. Reicherter, 647 F.2d 397, 400 (3d Cir.1981) (defendant must demonstrate “clear and substantial prejudice resulting in a manifestly unfair trial” before court will reverse district court’s exercise of discretion under Rule 14). It follows that the Court did not err in not severing Count Five as the severance of that count depended on the severance of Count Four.
B. Use of “Like Friendship” As a Specific Example in Jury Instructions
At trial, Anna argued that she acted solely out of friendship with the Medrano sisters, and thus she exchanged gifts with Anna and gave standard promises to help her and that the case involves nothing more. The District Court gave a “dual motive” instruction to the jury which stated that a person commits extortion under color of official right when that person has “a partly corrupt intent and a partly neutral intent, like friendship.” App. at 3378. At the trial Anna argued that the instruction undermined her defense because it used “friendship” as a specific example of a neutral intent even though she based her defense on her contention that she acted solely out of friendship in aiding Luisa. The Court denied Anna’s request and it used the “friendship” instruction in its charge to the jury.
Anna recognizes that the District Court’s charge correctly stated the law,[4] *449 but argues that the instruction nevertheless was misleading. She explains that “[t]he problem is that the district court seized upon Mrs. Delle Donna’s defense theory and suggested impermissibly to the jury that Mrs. Delle Donna’s friendship with Luisa Medrano was sufficient evidence of intent to commit extortion.” Appellants’ br. at 40. Furthermore, “the judge’s instructions eviscerated Mrs. Delle Donna’s defense.” Appellants’ reply br. at 13. Anna contends that by mentioning friendship as an example of neutral intent, the Court “led the jurors to conclude that Mrs. Delle Donna could be guilty of extortion simply by being Luisa Medrano’s friend.” Id. at 13-14.
We exercise plenary review when determining if a jury instruction correctly states the law, and, when the instruction passes that threshold requirement, we review a district court’s wording of the instruction for an abuse of discretion. See United, States v. Jimenez, 513 F.3d 62, 74-75 (3d Cir.2008). We conclude that an instruction is erroneous when we are left with a “substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.” United States v. Traitz, 871 F.2d 368, 383 (3d Cir.1989) (questioning whether trial court should have used the word “hustle” in its instructions) (quoting Somer v. Johnson, 704 F.2d 1473, 1477-78 (11th Cir.1983)). Though a district court should be careful when including specific examples in jury instructions, such a use of examples is not inherently questionable. Quite to the contrary, it may be useful when attempting to explain legal issues to jurors to use concrete exam-pies. After all, the Supreme Court has indicated that “[i]n charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence [or] by drawing their attention to the part of it which he thinks important.” Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). Of course, a reference to the evidence in the case at bar will be a reference to a specific situation.
We are satisfied that the District Court’s instruction did not prejudice Anna’s defense. To start with, as Anna recognizes, it was a correct statement of law. Furthermore, it did not give any suggestion (positive or negative) of the Court’s personal view of the case and it was not confusing or misleading.[5] We simply disagree with Anna’s assertion that the instruction might have led jurors to believe that Anna could be guilty of extortion “simply by being Luisa Medrano’s friend” or could be guilty if she assisted Luisa solely by reason of their friendship. In short, Anna does not explain why the instruction might have been misleading, and, instead, simply asserts that it was misleading. We will uphold the District Court on this point.
C. Motion for Judgment of Acquittal on Extortion Charge (Count III)
The Delle Donnas argue that the evidence was insufficient to convict them on the extortion count (Count Three), and thus the District Court erred in denying their Rule 29 motion on that count.[6] But *450 as we often have indicated a defendant challenging the sufficiency of the evidence bears a heavy burden. See United States v. Casper, 956 F.2d 416, 421 (3d Cir.1992). Furthermore, we will not weigh issues of credibility, for that is the jury’s province. United States v. Inigo, 925 F.2d 641, 649 (3d Cir.1991). Accordingly, if witnesses have given differing accounts of an event, on an appeal from a conviction we accept the account more favorable towards the government and we view all facts in the light most favorable to the government. United States v. Bobb, 471 F.3d 491, 494 (3d Cir.2006). Only after viewing the record in this way do we ask, “Was there enough evidence to support the conviction?”
A public official commits extortion under color of official right under 18 U.S.C. § 1951(a) when the official promises to engage in an official act in exchange for a personal gift. Evans v. United States, 504 U.S. 255, 268, 112 S.Ct. 1881, 1889, 119 L.Ed.2d 57 (1992). Unless the “gift” is a campaign contribution, the quid pro quo between the public official and the gift giver can be implicit. United States v. Antico, 275 F.3d 245, 257 (3d Cir.2001). Consequently, the official does not have specifically to promise anything in return, as long as all parties involved recognize that a gift is being given in exchange for official action. A wink and a nod is good enough.[7] Also, the official does not have to promise to perform a specific action in exchange for a specific gift; instead, the official can accept a “stream of benefits” in exchange for one or more official acts as though the official is on a retainer. See United States v. Kemp, 500 F.3d 257, 282 (3d Cir.2007).
The grand jury indicted Delle Donnas for conspiracy to commit extortion under color of official right so the government had the burden at the trial to demonstrate the presence of the elements of a conspiracy. A conspiracy can be formed when two people agree to commit extortion, each co-conspirator has an intent both to conspire and to achieve the aims of the conspiracy, and an overt act is taken in furtherance of the conspiracy’s goals. See, e.g., United States v. Conley, 37 F.3d 970, 976-77 (3d Cir.1994); United States v. Inigo, 925 F.2d 641, 652 (3d Cir.1991).
With these legal principles in mind, we turn to the evidence. Perhaps the most damning evidence against the Delle Don-nas was the nature of the gifts that Luisa gave them. The evidence revealed that Luisa provided the Delle Donnas with a bounty of gifts wholly incompatible with the idea that she gave the gifts out of friendship. For example, a jury surely could believe that gifts of thousands of dollars for gambling in Atlantic City, construction of a garage storage closet, and cosmetic breast surgery are not the type of gifts that friends normally give friends. Moreover, Anna not only received these gifts but actually requested some of them. Duvi testified that Anna knew that the gifts were “business.” Other testimony showed that David was present when certain gifts were exchanged, and he confirmed that he knew about some of the gifts. We agree with the government’s contention that “Luisa provided a stream of cash, gifts, and benefits which would have alerted any recipient that [her] inten *451 tions were not simply friendly.” Appel-lees’ br. at 38. We also agree with the District Court which concluded that a reasonable jury could find that the Delle Don-nas knew they were receiving these gifts in exchange for official acts.
Significantly, the Delle Donnas did not receive Luisa’s gifts passively. Anna directly promised to help Luisa and to speak with David about helping Luisa on various matters, as for example, when Luisa wanted a permit to convert a bar into an apartment. David took care of garbage tickets that were issued to Luisa. Though the evidence could not support a finding of an explicit quid pro quo, i.e., gifts in exchange for actions, and though, as we have indicated, the case is unusual as to a degree the gifts went in both directions, we think that a reasonable jury could have found an implicit quid pro quo based on the facts brought forth at trial; therefore, we must affirm.
D. Objection to Sentencing Enhancement for Perjury
David testified, denying much of Luisa’s and Duvi’s testimony as well as the charge that he had failed to report his rental and gift income for tax purposes. After the jury returned a guilty verdict, the District Court found that the jury “necessarily concluded” that David had not testified truthfully because the jury convicted him of wilfully filing a false income tax return, a charge he expressly denied, and because the jury must have rejected his testimony on the extortion charge. On appeal, David argues that the Court effectively penalized him for exercising his constitutional right to defend himself against the government’s allegations, something against which the guidelines specifically warn. See U.S.S.G. § 3C1.1 cmt. 2 (“This provision is not intended to punish a defendant for the exercise of a constitutional right.”).
While it is important to ensure that defendants are not punished for exercising their constitutional right to testify in their own defense, we conclude that David’s sentence was not actually enhanced on account of his testimony. The District Court calculated a higher advisory sentencing guideline range for David by reason of the obstruction of justice than it otherwise would have calculated, but then it imposed a below-guideline sentence on him because it thought that the Delle Donnas should receive the same sentence. The only difference in the calculations to determine David’s advisory guideline sentencing range and Anna’s advisory guideline sentencing range was the enhancement of David’s range by reason of his perjury; therefore, the Court effectively removed the enhancement for perjury from its calculation of David’s sentence though not from his advisory guideline sentence range. Thus, we do not need to determine if the enhancement was warranted as we are confident that David received the same sentence he would have received if the Court had not made the enhancement.[8]
*452 E. Request for Sentence Reduction Based on Sentences Given to Other Public Figures
After a court determines a defendant’s suggested guideline sentence, it considers whether that sentence is justified under the factors enumerated in 18 U.S.C. § 3553(a). See United States v. Tomko, 562 F.3d 558, 567-68 (3d Cir.2009) (en banc). The subsection at issue in this case, subsection 3553(a)(6), states that a sentencing court should “avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.” We will affirm a sentencing court’s decision regarding the section 3553(a) factors “unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.” Tomko, 562 F.3d at 568.
The Delle Donnas argue that the District Court did not give “meaningful consideration” to the section 3553(a) factors and, instead, only gave them “lip service.” Appellants’ br. at 59-60. But the record does not support this assertion as it makes clear that the Court considered the evidence the Delle Donnas put forward regarding sentences given to other public figures in New Jersey. The Court found that many of these cases were distinguishable for various reasons; they presented “different facts, different circumstances, and different Guideline ranges.” App. at 3649. Accordingly, the Court refused to reduce the Delle Donnas’ sentences under section 3553(a)(6) because that section only applies to defendants with similar records who have been found guilty of similar conduct. We cannot say that this determination was unreasonable, and we therefore will affirm the sentence.
Y. CONCLUSION
We will affirm the District Court’s orders of March 14, 2008, and April 29, 2008, and the judgments of October 27, 2008. Thus, we are upholding the denial of the severance of Counts Four and Five, the rejection of Anna’s challenge to the jury instructions, the denial of the motion for an acquittal, and the rejection of the section 3553(a) disparity argument.

. The government charged the Delle Donnas with conspiracy to commit extortion by promising to use their public offices in exchange for money and gifts. Inasmuch as both Anna and David were public officials they each could commit the unlawful act, but our review of the record indicates that the government primarily was concerned with the misuse of David's mayoral office, an activity in which Anna is alleged to have conspired.

. Luisa enhanced her income by employing illegal workers and failing to pay certain of her taxes. Many of her workers were smuggled into this country illegally and then were forced to work as prostitutes to pay off their debts for the smugglers' services. In 2003, the government began an investigation into this human trafficking, and eventually a grand jury indicted Luisa on charges which carried a potential sentence of 250 years in prison. During a subsequent interrogation, Luisa informed the federal authorities about the Delle Donnas' alleged misconduct, thereby triggering the investigation that led to this prosecution. After further investigation, the government decided that Luisa was not a primary participant in the human trafficking scheme and dropped many of the most severe charges against her. The government eventually offered Luisa a plea incentive in exchange for her testimony against the Delle Donnas. After the Delle Donnas’ conviction, Luisa was given substantial credit for her cooperation and the court sentenced her to a term of three years of probation and a period of home confinement. Supp. App. 7-8 (government describes Luisa as the “heart of [the] case” against the Delle Donnas). These circumstances make it clear that Luisa had an incentive to testify falsely so as to incriminate the Delle Donnas, but we recognize that the assessment of Luisa’s credibility was a matter left to the jury. See United States v. Haut, 107 F.3d 213, 220 (3d Cir.1997).

. The government also asserts that Luisa gave money and paid for volunteers to benefit David’s re-election campaigns. We do not make further reference to these assertions because the government acknowledges that it does not have evidence of an explicit quid pro quo between the Delle Donnas and Luisa with respect to these payments, and it acknowledges that campaign contributions cannot satisfy a quid pro quo requirement for a criminal conviction arising from the payment and receipt of the contributions unless the agreement was explicit. See McCormick v. United States, 500 U.S. 257, 273, 111 S.Ct. 1807, 1816, 114 L.Ed.2d 307 (1991).

. In the District Court, Anna's attorney stated, “It is not that it is an incorrect proposition of law about dual intent. But to use that pariic-ular example, particularly in light of the arguments made ... I think unduly highlights ... that particular notion.’’ App. at 3406-07.

. Anna suggests that the following instruction would have been more appropriate. "If you find that Mrs. Delle Donna acted out of friendship alone, then she did not act with criminal intent, and you must return a verdict of not guilty on the extortion charge.” Appellants’ reply br. at 14. This instruction makes the same point as the challenged instruction, but phrases the matter in the negative. While Anna might have preferred that the District Court have used her instruction, she has not shown why the Court committed error by using its own version.

. The Delle Donnas did not challenge the sufficiency of the evidence on Counts Four *450 and Five in the District Court and do not challenge it here either.

. Of course, it is hard to demonstrate what people are thinking if they do not express themselves. In this case, Duvi testified that Anna knew the gifts were “business.'' Apart from Duvi’s testimony as to Anna's private thoughts, the government argues that a trier of facts can draw an inference that there was an agreement from the nature of the gifts and from the Delle Donnas' actions assisting Luisa.

. We recognize that, in theory, the District Court might have increased Anna's sentence to match the sentence that it imposed on David and thus penalized Anna for David’s obstruction of justice. We are satisfied, however, that this did not happen because the Court sentenced both Delle Donnas at the bottom of Anna's guideline range and thus below the bottom of David's higher range. Plainly, Anna’s sentence anchored David’s sentence.
We also recognize that we have emphasized the separate character of calculations under the United States Sentencing Guidelines and variances under 18 U.S.C. § 3553(a). United States v. Gunter, 462 F.3d 237 (3d Cir.2006). Our decision to look to the bottom line of the sentencing here is not at odds with that emphasis. Under sentencing framework set out in Gunter, the separate application of the Sentencing Guidelines before consideration of the sentencing factors under section 3553 is necessary to appellate review since, without that *452 approach, we are "unable to determine whether the [District] Court denied ... [a departure] motion because if concluded there was no basis to grant it ... or because the Court was exercising its discretion^]” a distinction that bears on our standard of review. United States v. Lofink, 564 F.3d 232, 240 (3d Cir.2009). Here, the essential function of separate treatment has been vindicated by the District Court’s adherence to the Gunter framework, and we are free to observe that, at the end of the sentencing process, David is in the same position he would have been in had there been no decision to impose a Guidelines enhancement.